# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina



Division

Case No. _19cv766._

*(to be filled in by the Clerk's Office)*

|  |  |
|---|---|
| Derrick Allen | ) |
| *Plaintiff(s)* | ) |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) |
| *please write "see attached" in the space and attach an additional* | ) |
| *page with the full list of names.)* | ) |
| **-v-** | ) |
| Jennifer Elwell, Mark Nelson, Grant Gilliam,Cerelyn | ) |
| Davis, Durham Police Department, City Of Durham, | ) |
| Freda Black, Tracey Cline & | ) |
| Durham County district Attorney Office, NC State | ) |
| Bereua of Investigations | ) |
| *Defendant(s)* | ) |
| *(Write the full name of each defendant who is being sued. If the* | ) |
| *names of all the defendants cannot fit in the space above, please* | |
| *write "see attached" in the space and attach an additional page* | |
| *with the full list of names. Do not include addresses here.)* | |

Jury Trial: *(check one)*  ☒ Yes  ☐ No

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non–Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Case 1:19-cv-00766-TDS-LPA   Document 2   Filed 07/29/19   Page 1 of 49

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Derrick Allen |
| Address | PO BOX 25419 |

| | | |
|---|---|---|
| Durham | NC | 27702 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Durham |
| Telephone Number | 919-519-9198 |
| E-Mail Address | 78derrickallen@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Jennifer Elwell |
| Job or Title *(if known)* | SbI laboratory Technician |
| Address | 3320 Garner Road |

| | | |
|---|---|---|
| Raleigh | NC | 27610 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Wake County |
| Telephone Number | 919-662-4500 |
| E-Mail Address *(if known)* | No available email listed |

☒ Individual capacity     ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Mark Nelson |
| Job or Title *(if known)* | SBI Lab technician |
| Address | 3320 Garner Road |

| | | |
|---|---|---|
| Raleigh | NC | 27601 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Wake County |
| Telephone Number | 919-662-4500 |

| E-Mail Address *(if known)* | No available emails listed |
| | ☒ Individual capacity    ☒ Official capacity |

**Defendant No. 3**

| Name | Cerelyn Davis |
| Job or Title *(if known)* | Police Chief |
| Address | 602 East Main Street |
| | Durham | NC | 27701 |
| | *City* | *State* | *Zip Code* |
| County | Durham |
| Telephone Number | 919-560-4322 |
| E-Mail Address *(if known)* | no email provided online |
| | ☒ Individual capacity    ☒ Official capacity |

**Defendant No. 4**

| Name | Grant Gilliam |
| Job or Title *(if known)* | Ex- Investigator for duham PD |
| Address | 602 East Main Street |
| | Durham | NC | 27701 |
| | *City* | *State* | *Zip Code* |
| County | Durham |
| Telephone Number | No phone number listed. |
| E-Mail Address *(if known)* | No email listed for his individual |
| | ☒ Individual capacity    ☒ Official capacity |

## II.  Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.  Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.  Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

# Attachment to civil complaint

(1) City of Durham

101 City Hall Plaza
Durham, N.C.
27701
(2) Freda Black & Tracey Cline
Durham Co. District Attorney Office
510 South Dillard Street
Durham, N.C.
27701
(3) Durham Police Department
602 East Main Street
Durham, N.C.
27701
(4) Durham County District Attorney Office
602 East Main Street
Durham, North Carolina
27701
(5) North Carolina State Bureau of Investigation
3320 Garner Road
Raleigh, North Carolina
27601

SBI labatory Techicians wrote reports in a misleading manner to benefit Durham County Prosecutors, and did not explicitly or clearly communicate results to defense.

Durham Police department lodged Charge(s) Such as Statutory Sexual Offense, First degree Murder and Felony Child abuse when the evidence was not sufficient to lodge those charges which conduced to being categorize as a child murder and rapist.

Freda Black and Tracey Cline were the Distrcit Attorney and/or Assistant district attorney who prosecuted the case and seeked capital punishment (The Death Penalty) against I when the evidence was not sufficient to warrant a death sentence. Durham County District Attorney office employed both Freda Black and Tracey Cline.

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

The People described above Did not perform their duties which too infringed particular consitutional rights bestowed upon individuals born in the United States of America; I was subjected to cruel and unusual punishment which violates my 8th amendment; Moreover, my 5th , 6th & 14th ( section one) amendment of the united states constitution has been violated; 42 USC 1983.

## III.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

within the city limits of durham--Durham County.

B.   What date and approximate time did the events giving rise to your claim(s) occur?

Case 1:19-cv-00766-TDS-LPA   Document 2   Filed 07/29/19   Page 5 of 49

I was charged with First Degree Murder, First Degree Statutory Sexual Offense & Felony Child Abuse 02/09/1998; Everything else took place from the date I was imprisoned until the day i was cocered into accepting an alford plea.

C.     What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

I was wrongfully imprisoned for crimes i did not commit, Charges were lodged against me and the government did not have the evidence or suspicion to chrge and prosecute but instead attempted to cover up the blunder at my expense.I was wrongfully incarcerated for crimes i did not commit.

## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

From the outset, I was wrongfully charged with Offenses i did not committ, and too imprisoned for a duration of 12 years and 7 months; Moreover, due to the stigma that has been attached to my name I have been subject to hardship which is rife with misperception, deceit and neglect..

## V.     Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

Case 1:19-cv-00766-TDS-LPA   Document 2   Filed 07/29/19   Page 6 of 49

I am requesting to be compensated for the mental anguish and punitive damages in the amount of $3,000,000.00.

VI.     **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.     **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     07/29/2019

Signature of Plaintiff     _Derrick Allen Sr._

Printed Name of Plaintiff     Derrick Allen Sr.

B.     **For Attorneys**

Date of signing:     _____

Signature of Attorney     _____

Printed Name of Attorney     _____

Bar Number     _____

Name of Law Firm
Address

_____

|  | City | State | Zip Code |

Telephone Number
E-mail Address

STATE OF NORTH CAROLINA

COUNTY OF DURHAM

DURHAM COUNTY
**FILED**

MAR 10 2014

AT 11:52 O'CLOCK A M

BY _____
CLERK OF SUPERIOR COURT

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS

DERRICK ALLEN,
    Plaintiff,

        v.

JENNIFER ELWELL, in her individual and
official capacities, MARK NELSON, in his
individual capacity, GRANT GILLIAM,
in his individual and official capacities,
DURHAM POLICE DEPARTMENT,
CITY OF DURHAM,
and FREDA BLACK, in her individual capacity.
    Defendants.

**COMPLAINT**
(Jury Trial Demanded)

COMES NOW, the Plaintiff, pursuant to the laws of the State of North Carolina the Constitution of the State of North Carolina and the Constitution of the United States and complaining of the Defendants and alleges and says:

<u>INTRODUCTION</u>

Adesha Artis, died on February 9, 1998 in Durham, North Carolina. Doctors who examined the child reported that she had been assaulted and, later, that she had died as the result of being shaken violently. She had been left in the care of her mother's boyfriend, Derrick Allen. Allen was nineteen years old at the time and a high school dropout with a ninth grade education. He called 911 to report that something was wrong with the child. Derrick Allen was arrested that same day for First Degree Statutory Sex Offense against Adesha Artis. Allen denied any wrongdoing and voluntarily provided DNA samples, clippings of his nails and hairs from his head, chin and pubic area. Thereafter, he was indicted for First Degree Murder, First Degree Sexual Offense and Felony Child Abuse. He was appointed counsel and made several motions for discovery.

The death of Adesha Artis was investigated by the Durham Police Department and the case was prosecuted by Senior Assistant District Attorney Freda Black ("Black"). Evidence gathered by the Durham Police Department was submitted to the State Bureau of Investigation ("SBI") for testing. The SBI also conducted a polygraph test of one of the State's witnesses, Kia Ward, upon the joint request of the Grant Gilliam and Freda Black acting on behalf of the Durham Police Department and the Durham District Attorney's Office, respectively.

Jennifer Elwell was employed as a serologist with the State Bureau of Investigation and conducted tests on the clothing and panties of Adesha Artis. An initial test conducted on the victim's clothing and panties was positive for the presence of blood. However, a subsequent test was negative for the presence of blood and also indicated that the substance was diluted. Elwell's report did not contain the results of the subsequent confirmatory test on the child's clothing and underwear, and despite being advised of the results of the subsequent tests, neither

the Freda Black nor Grant Gilliam provided this exculpatory information to Derrick Allen or his counsel.

Derrick Allen always maintained his innocence in connection with crimes against Adesha Artis. However, upon the advice of counsel, he pled guilty to crimes against Adesha Artis by way of an Alford plea, which acknowledged that a jury could convict him, but allowed Allen to avoid officially admitting guilt. At that plea hearing, Freda Black stated to the Court that there was a factual basis for the entry of Allen's plea based in large part upon the results of tests on the victim's clothing and panties showing the presence of blood. Black made these representations to the Court even though she knew that these statements were inaccurate and misleading. On August 26, 1999, Derrick Allen's Alford plea was accepted and he was sentenced to more than fifty (50) years imprisonment. His projected release date was 2049.

On October 29, 1999, Derrick Allen wrote to various persons asking how to challenge his conviction and request copies of his court files. Prisoner Legal Services requested the court files from the Clerk of Court on behalf of Mr. Allen. He filed a *pro se* appeal with the North Carolina Court of Appeals challenging the legality of his conviction. Thereafter, the North Carolina Court of Appeals remanded the case to the Superior Court of Durham County with instructions to appoint counsel to assist Mr. Allen.

After the appointment and subsequent removal of two attorneys, Attorney Lisa Anderson Williams was appointed to represent Mr. Allen. Thereafter, she aggressively pursued discovery on Mr. Allen's behalf, including gaining access to evidence and information contained in the files of Durham District Attorney's Office and the Durham Police Department. Attorney Williams specifically requested access to property in evidence and the forensic files at the Durham Police Department. Her investigation revealed documents and information missing from the discovery provided to Derrick Allen and subsequently resulted in the release of exculpatory information previously unknown to Derrick Allen.

In August 2010 an audit of the serology unit of the North Carolina State Bureau of Investigation was released and Derrick Allen's case was flagged for reports that were inconsistent with the results of actual tests conducted. On September 10, 2010, Derrick Allen was released from custody after twelve and one-half years. He was thirty-one (31) years old and had spent almost half of his life incarcerated for crimes he did not commit.

On October 12, 2010, Attorney Lisa Williams filed a Motion To Dismiss with Prejudice seeking to have all charges against Derrick Allen dismissed for failure of the State to comply with discovery statutes and for violation of Derrick Allen's constitutional rights resulting in irreparable harm to Mr. Allen. On or about December 11, 2010, the Honorable Orlando F. Hudson, Jr. dismissed with prejudice all charges against Derrick Allen finding there had been flagrant violations of Mr. Allen's constitutional rights. In particular, the Court found disturbing errors by Jennifer Elwell of the serology unit of the State Bureau of Investigation and representations made to the Court by Senior Assistant District Attorney Freda Black regarding the blood evidence. The Court also determined that the Durham District Attorney's Office and Durham Police Department failed to turn over exculpatory evidence to Mr. Allen, including police reports that indicated that the only witness against Allen had sex with him and that this witness subsequently viewed Allen as an enemy; as well as the full results of an SBI polygraph

test of that witness, and whether she was asked how truthful she had been.

As a direct result of the acts and omissions of the Defendants, both individually and collectively, Derrick Allen was induced to accept an Alford plea of guilty to crimes that he did not commit and was incarcerated each year from 1999 until 2010 and sustained personal injuries which resulted in substantial damages each year from 1999 to 2010. These include, but are not limited to inadequate medical treatment, pain and suffering, severe mental anguish, emotional distress, humiliation, indignities, embarrassment, degradation, restrictions on all forms of personal freedom, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, family relations, television, travel, enjoyment and expression.

Beyond compensating Derrick Allen for the twelve and one half years he spent in custody, this action seeks to redress the unlawful official policies, practices and/or customs that caused Defendants' violations of Mr. Allen's constitutional rights as guaranteed by the United States Constitution and the Constitution and laws of the State of North Carolina.

## PARTIES

Plaintiff, Derrick Allen, is a natural person, who at all times relevant to this action, resided in North Carolina, and after his arrest and imprisonment, was confined at Central Prison in Raleigh, North Carolina.

Defendant Jennifer Elwell is an individual who resided in North Carolina at all times relevant to this action. Further, at all times relevant to this action, Defendant Elwell was employed as a serologist with the State Bureau of Investigation. Defendant Elwell had primary responsibility and authority for conducting the tests of certain items of evidence in the investigation of the death of Adesha Artis, to wit: the Artis' clothing and panties; and for writing reports detailing the results of tests she performed on the aforementioned evidence. Defendant Elwell is named in her individual capacity for actions taken under color of law within the scope of her employment.

Defendant Mark Nelson is an individual who resided in North Carolina at all times relevant to this action. Further, at all times between 1986 and 2002, Defendant Nelson was the Chief of the Serology Section of the SBI Crime Lab and supervised the work of Elwell.

Defendant City of Durham is a municipal entity organized under the laws of the State of North Carolina.

Defendant Durham Police Department is a governmental agency organized and existing as an arm of the City of Durham organized under the laws of the State of North Carolina.

Defendant Grant Gilliam, is an individual who resided in North Carolina at all times relevant to this action. Further, at all times relevant to this action, Defendant Gilliam was employed by the City of Durham with the Durham Police Department as a homicide investigator. Defendant Gilliam had supervisory responsibility and authority over the investigation into the death of Adesha Artis that resulted in the wrongful arrest and incarceration of Derrick Allen. Defendant

Gilliam is named in his individual capacity for actions taken under color of law within the scope of his employment.

Defendant Freda Black is an individual who resided in North Carolina at all times relevant to this action. Further, at all times relevant to this action, Defendant Black was employed as a Senior Assistant District Attorney by the State of North Carolina. Defendant Black had primary responsibility and authority for the prosecution of crimes against Adesha Artis that resulted in the wrongful arrest and incarceration of Derrick Allen. Defendant Black is named in her individual capacity for actions taken under color of law within the scope of her employment and for actions taken as an attorney licensed to practice law in the State of North Carolina and subject to the Rules of Professional Conduct promulgated by the North Carolina State Bar.

## JURISDICTION AND VENUE

Plaintiff, Derrick Allen, brings this civil action under 42 U.S.C. 1983 for acts committed by defendants under color of state law which deprived Allen of his liberty without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

Allen's action arises under the Constitution and laws of the United States and the constitution and laws of the State of North Carolina.

This Court has original jurisdiction over Allen's federal claims pursuant to 28 U.S.C. 1331 and 28 U.S.C. 1343(a)(3).

The Court has pendent jurisdiction over Allen's state law claims pursuant to 28 U.S.C. 1367.

All events giving rise to this cause of action occurred in Durham County, North Carolina.

## DEMAND FOR JURY TRIAL

Plaintiff, Derrick Allen, hereby demands a trial by jury on all issues so triable.

## FACTS

Adesha Artis, died on February 9, 1998 in Durham, North Carolina. She was the daughter of Derrick Allen's then-girlfriend and the toddler had been left in his care.

Derrick Allen was nineteen years old when Adesha Artis died and he had a ninth grade education.

Derrick Allen called 911 and reported that there was something wrong with the toddler. He was arrested that same day for First Degree Statutory Sex Offense against Adesha Artis. Mr. Allen denied any wrongdoing and voluntarily provided DNA samples, clippings of his nails and hairs from his head, chin and pubic area.

Derrick Allen always maintained his innocence and during the early years of his incarceration frequently wrote to his former girlfriend to assure her that he had not hurt or killed her little girl.

The death of Adesha Artis was investigated by Investigator Grant Gilliam ("Gilliam") of the Durham Police Department and other members of the Durham Police Department and the State's case against Derrick Allen was handled by Senior Assistant District Attorney Freda Black ("Black") who also assisted Gilliam in the investigation.

Jennifer Elwell was employed as a serologist with the State Bureau of Investigation and conducted tests on the clothing and panties of Adesha Artis.

On or about February 16, 1998, Derrick Allen was indicted for First Degree Statutory Sex Offense and on March 2, 1998 he was indicted for First Degree Murder and Felony Child Abuse.

On April 2, 1998 the State of North Carolina filed notice of intention and application for a Rule 24 conference, indicating that the State intended to seek the death penalty against Derrick Allen.

On April 24, 1998, Derrick Allen filed numerous pretrial motions and served them on the State, including a Motion To Preserve Files and Motions for Discovery in all cases.

On or about July 6, 1998, the State's motion to seek the death penalty against Derrick Allen was granted.

On or about February 22, 1999, Derrick Allen filed and served upon the State various motions, including a Motion For Crime Scene Report, Motion To Produce Witness Reports of Expert, Motion to Produce Medical Records for Adesha Artis, Motion To Produce Witness Statements (that the State does not intend to use at trial and other exculpatory information), Motion To Produce Data, Test Procedures and Diagrams, and Motion To Produce Interview Statements.

On or about March 4, 1999, the State was ordered to disclose any and all exculpatory information to Derrick Allen.

On or about August 26, 1999, Derrick Allen entered an Alford plea of guilty to crimes involving Adesha Artis. He received a sentence in excess of fifty (50) years, but he was spared the death penalty. Derrick Allen was nineteen (19) years old when he entered the Department of Corrections and his projected release date was 2049.

Beginning that same year on October 29, 1999, Derrick Allen, who had a ninth grade education at the time, wrote to various persons asking how to challenge his conviction and request copies of his court files. Prisoner Legal Services requested the court files from the Clerk of Court on behalf of Mr. Allen.

On or about January 27, 2004, Derrick Allen filed a *pro se* appeal with the North Carolina Court of Appeals challenging the legality of his conviction.

On or about February 10, 2004, the North Carolina Court of Appeals remanded the case to the Superior Court of Durham County and instructs that counsel be appointed to assist Mr. Allen.

On or about May 25, 2004, Derrick Allen wrote to the Clerk of Superior Court in Durham to inquire why he had not been returned to Durham County per the order of the North Carolina Court of Appeals. Also, in May 2004, Derrick Allen filed a *pro se* Motion To Preserve and Locate Evidence in his cases.

On or about September 21, 2004, Derrick Allen was appointed counsel as instructed by the North Carolina Court of Appeals.

On March 18, 2009, the Honorable Orlando F. Hudson, Jr. vacated the judgments entered on August 26, 1999 and Derrick Allen withdrew his Alford guilty plea. However, he remained incarcerated because he was unable to make bond.

On or about July 8, 2009, Mark Edwards was removed by the court as counsel for Derrick Allen and new counsel was appointed.

On or about February 16, 2010, Michael Drive was removed by the Court as counsel for Derrick Allen and new counsel was appointed.

On February 18, 2010, Lisa Anderson Williams was appointed as counsel for Derrick Allen. He had already been arraigned and his trial was scheduled to begin on May 10, 2010.

On the 13th and 15th of April, 2010, respectively, Attorney Lisa Williams requested access to inspect and copy the State's filed, the police officer's filed, and to inspect property in evidence and the forensic files at the Durham Police Department.

On April 15, 2010, Attorney Lisa Williams notified Assistant District Attorney Mitchell Garrell that there were documents and information missing as indicated by reference to these documents in material produced by the State. On April 25, 2010, Attorney Lisa Williams sent a memo to Garrell identifying the missing documents and information.

On or about July 10, 2010, the State released to Attorney Lisa Williams exculpatory information previously unknown to Derrick Allen. Attorney Williams requested additional information and access to the police officer's files on July 25, 2010.

On August 18, 2010, an audit of the serology unit of the North Carolina State Bureau of Investigation was released. Derrick Allen's case was flagged for reports that were inconsistent with the results of actual tests conducted.

On September 10, 2010, Derrick Allen was released from custody after twelve and one-half years. He was thirty-one (31) years old and had spent almost half of his life incarcerated for crimes he did not commit.

On October 12, 2010, Attorney Lisa Williams filed a Motion To Dismiss with Prejudice seeking to have all charges against Derrick Allen dismissed for failure of the State to comply with discovery statutes and for violation of Derrick Allen's constitutional rights resulting in irreparable harm to Mr. Allen.

On or about December 11, 2010, the Honorable Orlando F. Hudson, Jr. dismissed with prejudice all charges against Derrick Allen finding there had been flagrant violations of Mr. Allen's constitutional rights.

In particular, the Court found disturbing errors by Jennifer Elwell of the serology unit of the State Bureau of Investigation and representations made to the Court by Senior Assistant District Attorney Freda Black regarding the blood evidence.

## CAUSES OF ACTION

### I. FEDERAL LAW

### A. CLAIMS UNDER 42 U.S.C. 1983 AGAINST ELWELL FOR VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

#### COUNT I - Defendant Elwell Intentionally Misrepresented Evidence.

1. Each and every unnumbered paragraph hereinabove, is hereby re-alleged and incorporated herein by reference as if fully set forth.

2. At all times relevant to this action, Defendant Jennifer Elwell was employed by the State of North Carolina with the State Bureau of Investigation in the serology unit.

3. In her capacity as a serologist with the State Bureau of Investigation, Defendant Elwell was responsible for conducting tests on physical evidence to determine the presence of blood and other substances.

4. At all times relevant to this action, Defendant Elwell was acting within the course and scope of her employment with the State of North Carolina.

5. During the course of her employment, Defendant Elwell had received training on the standards and requirements for conducting tests on physical evidence to determine the presence or blood and other substances; and on the standards and requirements for reporting the results of said tests.

6. Defendant Elwell conducted tests on the clothing and panties of Adesha Artis.

7. Defendant Elwell reported that testing on the child's underwear had shown chemical indications of blood. However, her report failed to say that subsequent confirmatory tests were negative for blood and the stains were dilute.

8. Defendant Elwell, intentionally misrepresented the evidence against Derrick Allen by creating a false and misleading report that indicated that there was blood on the child victim's clothing and panties.

9. In intentionally misrepresenting this evidence and creating the false and misleading report, Defendant Elwell acted with reckless indifference to Allen's constitutional rights.

10. Defendant Elwell could reasonably foresee that her misrepresentation of evidence and false and misleading report would result in Allen's conviction and imprisonment.

11. Defendant Elwell's intentional misrepresentation of the evidence against Derrick Allen was a direct and proximate cause of his conviction and subsequent imprisonment.

12. Defendant Elwell was acting under color of law when she intentionally misrepresented the evidence against Allen and created the false and misleading serology report.

13. Defendant Elwell's intentional misrepresentation of evidence and creation of a false and misleading report deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the united States Constitution.

14. Because Defendant Elwell intentionally misrepresented evidence against Allen and created a false and misleading serology report, Defendant Elwell is liable in her individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

15. Defendant Elwell had a continuing duty as an SBI employee to correct the false and misleading report that she submitted. That obligation began on the day she submitted her report and continued every day, month and year that Derrick Allen was in jail and for as long as Defendant Elwell was employed by the State of North Carolina.

16. Had Defendant Elwell ever corrected the laboratory report or disclosed the negative results of confirmatory tests before Derrick Allen pled guilty in 1998, the charges against Allen would have been dismissed and he would have avoided almost thirteen years imprisonment.

17. In each year after Allen's conviction, from 1998 through and including 2010, Defendant could have and would have obtained post-conviction relief and avoided additional time in prison if Defendant Elwell had corrected the laboratory report and disclosed the negative results of confirmatory tests.

18. Defendant Elwell's intentional failure to correct the false and misleading serology report in each year from 1998 and 2010 deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

19. Because Defendant Elwell's intentionally failed to correct the false and misleading serology report in each year from 1998 through 2010, in reckless indifference to Allen's constitutional rights, Defendant Elwell is liable in her individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

## COUNT II - Defendant Elwell Failed To Disclose Exculpatory Evidence

20. Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

21. The serology report created and submitted by Defendant Elwell intentionally omitted the results of confirmatory tests on the clothing and panties of Adesha Artis.

22. The results of these confirmatory tests showed were negative for the presence of blood and showed that the stains were dilute.

23. Defendant Elwell's serology report regarding the blood evidence on the clothing and panties of Adesha Artis was incomplete at best, and at worst, was designed to create a false impression of guilt.

24. Defendant Elwell intentionally withheld exculpatory evidence by failing to disclose in her report that the confirmatory tests on the victim's clothing and panties were negative for the presence of blood.

25. In withholding exculpatory evidence from Allen, Defendant Elwell acted with reckless indifference to Allen's constitutional rights.

26. Defendant Elwell could reasonably foresee that her failure to disclose exculpatory evidence would result in Allen's conviction and imprisonment.

27. Defendant Elwell's intentional withholding of exculpatory evidence from Derrick Allen was a direct and proximate cause of his conviction and subsequent imprisonment.

28. Defendant Elwell was acting under color of law when she withheld the exculpatory evidence from Allen.

29. Defendant Elwell's intentional withholding of exculpatory evidence deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the united States Constitution.

30. Because Defendant Elwell intentionally withheld exculpatory evidence from Allen, Defendant Elwell is liable in her individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

31. Defendant Elwell had a continuing duty as an SBI employee to disclose the existinece of exculpatory evidence to Allen or his legal counsel. That obligation began on the day she withheld the exculpatory test results and continued every day, month and year that Derrick Allen was in jail and for as long as Defendant Elwell was employed by the State of North Carolina.

32. Had Defendant Elwell ever disclosed the exculpatory test results before Derrick Allen pled guilty in 1998, the charges against Allen would have been dismissed and he would have avoided almost thirteen years imprisonment.

33. In each year after Allen's conviction, from 1998 through and including 2010, Defendant could have and would have obtained post-conviction relief and avoided additional time in prison if Defendant Elwell had disclosed the existence of the exculpatory test results.

34. Defendant Elwell's intentional failure to disclose the exculpatory test results in each year from 1998 and 2010 deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

35. Because Defendant Elwell's intentionally failed to disclose the exculpatory test results in each year from 1998 through 2010, in reckless indifference to Allen's constitutional rights, Defendant Elwell is liable in her individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

## B. CLAIMS UNDER 42 U.S.C. 1983 AGAINST NELSON FOR VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

### COUNT I – Defendant Nelson Intentionally Misrepresented Evidence

36. Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

37. At all times relevant to this action, Defendant Mark Nelson was employed by the State of North Carolina with the State Bureau of Investigation as the Chief of the Serology Section of the SBI Crime Lab.

38. The role of a forensic laboratory is to be an objective reporter of facts to all stakeholders in the criminal justice system.

39. In his capacity as Chief of the Serology Section of the SBI Crime Lab, Defendant Nelson was responsible for the policies, practices and regulations promulgated by the Serology Section.

40. In his capacity as Chief of the Serology Section of the SBI Crime Lab, Defendant Nelson was also responsible for supervising and overseeing the conduct of SBI analysts within the Serology Section, reviewing the results of reports created by analysts within the Serology Section and supervising and overseeing the tests performed within the Serology Section of the SBI Crime Lab.

41. In August 2010, an independent audit of the SBI Crime Lab determined that Defendant Mark Nelson as Section Chief, undermined the objective role of the forensic laboratory by promoting a "mindset . . . that the lab's customer was law enforcement and reported results should be tailored primarily for law enforcement's consumption."

42. As Chief of the Serology Section and a Defendant Elwell's supervisor, Defendant Nelson knew before and after Elwell submitted her false and misleading report regarding the substance on Adesha Artis' clothing and panties in 1998, that Elwell had a practice of producing and submitting official SBI laboratory reports that falsely indicated the presence of blood, while concealing the negative results of confirmatory tests.

43. Defendant Nelson encouraged, condoned and approved of the practice of Elwell in creating and submitting official SBI laboratory results that falsely indicated the presence of blood while concealing the negative results of confirmatory tests.

44. Defendant Nelson knew and intended that this practice and custom described hereinabove created a systematic bias in favor of law enforcement and against defendants in criminal cases.

45. Defendant Nelson knew and intended that this practice and custom described hereinabove routinely resulted in false information being provided to defense counsel.

46. Defendant Nelson knew and intended that this practice and custom described hereinabove routinely resulted in the failure to disclose material and exculpatory evidence to defense counsel.

47. Defendant Nelson knew or should have known that this practice and custom described hereinabove violated the federal constitutional rights of criminal defendants.

48. Defendant Nelson acted with reckless indifference to Allen's constitutional rights by encouraging, condoning and approving Elwell's practice of intentionally misrepresenting evidence by creating and submitting serology reports that falsely indicated the presence of blood while failing to disclose negative confirmatory test results.

49. Defendant Nelson could reasonably foresee that his encouragement, condonation and approval of Elwell's practice of intentionally misrepresenting evidence was a direct and proximate cause of Allen's conviction and subsequent imprisonment.

50. Because Defendant Nelson intentionally encouraged, condoned and approved Defendant Elwell's practice of intentionally misrepresenting evidence, Allen was wrongfully imprisoned for almost thirteen years for a crime he did not commit.

51. Defendant Nelson was acting under color of law when he encouraged, condoned and approved the practice of intentionally misrepresenting evidence.

52. By knowingly and intentionally encouraging, condoning and approving Elwell's intentional misrepresentation of evidence and creation of a false and misleading report, Defendant Nelson deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the united States Constitution.

53. Because Defendant Nelson knowingly and intentionally encouraged, condoned and approved Elwell's practice of intentionally misrepresenting evidence, Defendant Nelson is liable in his individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

54. Defendant Nelson had a continuing duty as the Chief of the Serology Section of the SBI Crime Lab to correct the false and misleading report submitted by analysts under his supervision. That obligation began on the day Elwell submitted her report and continued every day, month and year that Derrick Allen was in jail and for as long as Defendant Nelson was employed by the State of North Carolina.

55. Had Defendant Nelson not encouraged, condoned and approved Defendant Elwell's conduct in misrepresenting evidence and creating false laboratory reports, the charges against Allen would have been dismissed and he would have avoided almost thirteen years imprisonment.

56. In each year after Allen's conviction, from 1998 through and including 2010, Derrick Allen could have and would have obtained post-conviction relief and avoided additional time in prison if Defendant Nelson had acted to correct what he knew to be false and misleading laboratory reports created by Defendant Elwell.

57. Defendant Nelson's intentional failure to correct the false and misleading serology report created and submitted by Elwell in each year from 1998 and 2010 deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

58. Because Defendant Nelson intentionally failed to correct the false and misleading serology report created and submitted by Elwell in each year from 1998 through 2010, in reckless indifference to Allen's constitutional rights, Defendant Nelson is liable in his individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

**COUNT II – Defendant Nelson Failed To Disclose Exculpatory Evidence**

59. Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

60. As Chief of the Serology Section of the SBI Crime Lab, Defendant Nelson intentionally and in bad faith encouraged, condoned and approved the practice of some SBI analysts, in particular Defendant Elwell, of withholding exculpatory evidence by failing to disclose negative confirmatory test results.

61. Defendant Nelson could reasonably foresee that his encouragement, condonation and approval of Elwell's practice of withholding exculpatory evidence was a direct and proximate cause of Allen's conviction and subsequent imprisonment.

62. Because Defendant Nelson intentionally encouraged, condoned and approved Defendant Elwell' s practice of withholding exculpatory evidence, Allen was wrongfully imprisoned for almost thirteen years for a crime he did not commit.

63. Defendant Nelson was acting under color of law when he encouraged, condoned and approved the practice of intentionally withholding exculpatory evidence.

64. By knowingly and intentionally encouraging, condoning and approving Elwell's intentional failure to disclose exculpatory evidence, Defendant Nelson deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the united States Constitution.

65. Because Defendant Nelson knowingly and intentionally encouraged, condoned and approved Elwell's practice of intentionally withholding exculpatory evidence, Defendant Nelson is liable in his individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

66. Defendant Nelson had a continuing duty as the Chief of the Serology Section of the SBI Crime Lab to disclose material and exculpatory evidence. That obligation began on the day Elwell submitted her report and continued every day, month and year that Derrick Allen was in jail and for as long as Defendant Nelson was employed by the State of North Carolina.

67. Had Defendant Nelson not encouraged, condoned and approved Defendant Elwell's conduct in intentionally withholding exculpatory evidence, the charges against Allen would have been dismissed and he would have avoided almost thirteen years imprisonment.

68. In each year after Allen's conviction, from 1998 through and including 2010, Derrick Allen could have and would have obtained post-conviction relief and avoided additional time in prison if Defendant Nelson had acted to disclosure the exculpatory evidence intentionally withheld by Elwell.

69. Defendant Nelson's intentional failure to disclose material and exculpatory evidence in each year from 1998 and 2010 deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

70. Because Defendant Nelson intentionally failed to disclose exculpatory evidence in each year from 1998 through 2010, in reckless indifference to Allen's constitutional rights, Defendant Nelson is liable in his individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

C. **CLAIMS UNDER 42 U.S.C. 1983 AGAINST ELWELL AND NELSON FOR CONSPIRACY TO DEPRIVE ALLEN OF HIS CONSTITUTIONAL RIGHTS VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

71. Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

72. As set forth in detail hereinabove, Defendants Elwell and Nelson acted jointly and in concert with the intention of depriving Derrick Allen of his constitutional rights.

73. Beginning in 1998 and continuing through the remainder of their employment with the SBI, Defendants Elwell and Nelson, acting under color of state law, conspired to violate Allen's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

74. The acts in furtherance of the conspiracy include, but are not limited to:

   a. Defendant Elwell produced and submitted the false and misleading serology report.

   b. Defendant Elwell falsely affirmed that "This report represents a true and accurate result of my analysis of the item(s) described."

   c. Defendant Nelson encouraged, condoned and approved Elwell's practice of creating and submitting reports that falsely indicated the presence of blood while concealing the negative results of confirmatory tests.

75. In conspiring to violate Allen's constitutional rights, Defendants Elwell and Nelson acted with reckless indifference to Allen's constitutional rights.

76. When they conspired to violate Allen's constitutional rights, Defendants Elwell and Nelson could reasonably foresee that their conspiracy would result in Allen's conviction and subsequent imprisonment.

77. The conspiracy between Defendants Elwell and Nelson was a direct and proximate cause of Allen's conviction and subsequent imprisonment.

78. As a result of the conspiracy between Defendants Elwell and Nelson, Allen was wrongfully imprisoned for almost thirteen years for a crime he did not commit.

79. The conspiracy between defendants Elwell and Nelson deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

80. Because Defendants Elwell and Nelson conspired to deprive Allen of his constitutional rights, they are each liable in their individual capacities to Allen for compensatory damages under 42 U.S.C. 1983.

## D. CLAIMS UNDER 42 U.S.C. 1983 AGAINST BLACK FOR VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

81. Each and every unnumbered paragraph hereinabove, is hereby re-alleged and incorporated herein by reference as if fully set forth.

82. North Carolina is divided into judicial districts and for each of these districts there is an elected District Attorney who is a state official and serves as the district's chief law enforcement officer who prosecutes crimes in the name of the State of North Carolina.

83. Senior Assistant District Attorneys are employees of the District Attorney who serve at the pleasure of the District Attorney and therefore these individuals are employees of the State of North Carolina.

84. At all times relevant to this action, Senior District Attorney Freda Black was employed by then District Attorney James Hardin, Jr. and prosecuted cases by, on behalf of, and in the name of the State of North Carolina.

85. At all times relevant to this action, Senior Assistant District Attorney Freda Black represented the State of North Carolina in its prosecution of one or more criminal charges against Derrick Allen.

86. At all times relevant to this action, Defendant Black was acting within the course and scope of her employment with the State of North Carolina in her capacity as a Senior Assistant District Attorney.

87. At all times relevant to this action, Defendant Freda Black was an attorney licensed to practice law in the State of North Carolina.

88. In North Carolina, lawyers are bound by the Rules of Professional Conduct that sets forth basic ethical standards and requirements for the conduct and practice of law in this state.

89. Lawyers in North Carolina are also required to complete a certain number of hours of continuing legal education to ensure that each lawyer remains abreast of new developments in the law and this includes a specific requirement to receive ethics training each year.

90. Upon information and belief, at all times relevant to this action, Defendant Black is and was a member in good standing with the North Carolina State Bar, and therefore, has completed the required hours for continuing legal education to include ethics education.

91. While being employed by the State of North Carolina, Defendant Freda Black represented to the Superior Court, at Derrick Allen's plea hearing, that a factual basis existed for entry of the plea, to wit: the presence of blood on the clothing and panties of Adesha Artis.

92. At the time she made such representation to the Court, Defendant Black knew that her representation of the results contradicted the serology test results as she had previously been advised by Defendant Elwell that subsequent tests on the child's clothing and panties were negative for blood.

93. Defendant Black knew and intended that her statement to the Court regarding the existence of blood on the clothing and panties of the child victim was false and misleading.

94. When Defendant Black made the statement to the Court she intended to create and did in fact create a false impression of Derrick Allen's guilt.

95. Prior to making such representation to the Court, Defendant Black directed Defendant Elwell not to include the results of negative confirmatory tests in the official SBI report, even though Defendant Elwell discussed with her the existence of such negative confirmatory test results.

96. Defendant Black also reviewed statements made by Kia Ward, a witness in the investigation into the death of Adesha Artis, to one or more employees of the Durham Police Department.

97. Defendant Black, acting in an investigative capacity, then caused a polygraph examination to be conducted upon Kia Ward.

98. Defendant Black met with Defendant Gilliam to determine what specific questions to pose to Kia Ward during her polygraph examination and submitted these questions by secret memo to the State Bureau of Investigation.

99. Defendant Black knew that the failure to ask the following two questions and/or the failure to include these questions in the result of the polygraph that determined Kia Ward was "not deceptive" was exculpatory information to which Derrick Allen was entitled. Those questions were: "Did you (Kia Ward) do anything to harm Adesha Artis' vagina?" and "Have you been truthful with Investigator Gilliam?" The import of these two questions cannot be disregarded by anyone objectively seeking the truth in this matter.

100. Defendant Black knew that the State's polygraph of Kia Ward was incomplete and/or misleading.

101. Defendant Black acted in an investigative capacity to misrepresent evidence regarding the presence or absence of blood on the victim's clothing and panties.

102. Defendant Black acted in an investigative capacity to misrepresent evidence concerning the statements of a witness against Derrick Allen.

103. Defendant Black intentionally misrepresented the evidence against Derrick Allen by directing that negative confirmatory test results be omitted from the official SBI serology report.

104. Defendant Black intentionally misrepresented evidence against Derrick Allen by directing the polygraph of a key witness, Kia Ward, by secret memo to the SBI that did not include questions relevant to the witness' involvement in harming the victim,

bias against Allen or truthfulness to investigators.

105.    Defendant Black intentionally misrepresented evidence against Derrick Allen by falsely reporting the results of the polygraph of Kia Ward.

106.    In intentionally misrepresenting the serology report and polygraph test results, Defendant Black acted with reckless indifference to Allen's constitutional rights.

107.    Defendant Black could reasonably foresee that her intentional misrepresentation of evidence would induce Derrick Allen in making an Alford plea.

108.    Defendant Black could also reasonably foresee that her intentional misrepresentation of evidence would result in Allen's conviction and imprisonment.

109.    Defendant Black's intentional misrepresentation of the evidence against Derrick Allen was a direct and proximate cause of his conviction and subsequent imprisonment.

110.    Defendant Black was acting under color of law when she intentionally misrepresented the evidence against Allen and created the false and misleading serology report.

111.    Defendant Black's intentional misrepresentation of evidence deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

112.    Because Defendant Black intentionally misrepresented evidence against Allen, Defendant Black is liable in her individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

**COUNT II - Defendant Black Failed To Disclose Exculpatory Evidence**

112.    Defendant Black knew that she had an affirmative duty to provide all exculpatory evidence to Derrick Allen, including the results that showed that subsequent tests on the child victim's clothing and panties were negative for blood.

113.    At all times relevant to this action, Defendant Black was an experienced prosecutor who was thoroughly familiar with and knowledgeable about relevant case law, specifically, the affirmative duty under *Brady v. Maryland*, and its progeny to provide exculpatory evidence to defendants in criminal case.

114.    Defendant Black knew that a report showing that confirmatory tests on a victim's clothing that was negative for the presence of blood was exculpatory evidence as this was clearly established by case law prior to 1998.

115.    Defendant Black knew that the statements of Kia Ward were exculpatory material subject to discovery pursuant to *Brady v. Maryland* after she disclosed that she

considered Mr. Allen her enemy as this was clearly established by case law prior to 1998.

116.   In addition to her duty under the Constitution of the United States, Defendant Black knew that she had an ethical duty as a member of the North Carolina State Bar to provide all exculpatory evidence to Derrick Allen, including the results that showed that subsequent tests on the child's clothing and panties were negative for blood, the statements of Kia Ward and the questions and results of the polygraph examination of Kia Ward.

117.   Defendant Black knew that she was intentionally violating the Rules of Professional Conduct which govern the individual conduct of attorneys, including prosecutors who might otherwise enjoy immunity from liability in their official capacities.

118.   Defendant Black knew that the results of the polygraph of Kia Ward were exculpatory evidence that she was required to be disclosed to Derrick Allen.

119.   In intentionally withholding this exculpatory evidence from Allen, Defendant Black acted with reckless indifference to Allen's constitutional rights.

120.   When Defendant Black intentionally withheld exculpatory evidence she could reasonably foresee that the failure to disclose this evidence would result in Allen's conviction and/or induce him to enter an Alford plea of guilty to crimes he did not commit.

121.   Defendant Black was acting under color of state law when she intentionally withheld the exculpatory evidence.

122.   Defendant Black, knew that her intentional withholding of exculpatory evidence violated Allen's rights under the Constitution of the United States.

123.   As a direct result of the acts or omissions of Defendant Black Derrick Allen was induced into making an Alford plea of guilty to crimes he did not commit because critical exculpatory information was withheld from him prior to his decision to forego his constitutional right to a trial, to confront and cross-examine the witnesses against him, and to have a fair compulsory process.

124.   As a direct result of the acts or omissions of Defendant Black, Derrick Allen was irreparably and immeasurably harmed in that he remained incarcerated for a period of more than twelve and one-half years for a crime he did not commit.

125.   Defendant Black's intentional withholding of exculpatory evidence was a direct and proximate cause of Allen's conviction and subsequent imprisonment.

126.   Defendant Black's conduct in intentionally withholding exculpatory information from Derrick Allen is made more alarming by the fact that the suppression of this

evidence occurred simultaneous with the State's threat to kill Mr. Allen by imposition of the death penalty if he opted to exercise his rights at trial, which would have uncovered Defendants' illegal and unconstitutional behavior.

127.    Defendant Black's intentional withholding of exculpatory evidence deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

128.    Because Defendant Black intentionally withheld exculpatory evidence from Allen, Defendant Black is liable in her individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

E.  **CLAIMS UNDER 42 U.S.C. 1983 AGAINST ELWELL AND BLACK, IN THEIR INDIVIDUAL CAPACITIES, FOR CONSPIRACY TO DEPRIVE ALLEN OF HIS CONSTITUTIONAL RIGHTS VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

129.    Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

130.    As set forth in detail hereinabove, Defendants Elwell and Black acted jointly and in concert with the intention of depriving Derrick Allen of his constitutional rights.

131.    Beginning in 1998, Defendants Elwell and Black, acting under color of state law, conspired to violate Allen's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

132.    The acts in furtherance of the conspiracy include, but are not limited to:

   a.  Defendant Elwell conducted the tests on the clothing and panties of the child victim and advised Defendant Black about the negative confirmatory test results.

   b.  Defendant Black directed Defendant Elwell not to include the confirmatory test results in the official SBI report.

   c.  Defendant Elwell produced  and submitted the false and misleading serology report.

   d.  Defendant Elwell falsely affirmed that "This report represents a true and accurate result of my analysis of the item(s) described."

   e.  Defendant Black requested, encouraged, condoned and approved Elwell's creation and submission of the report that falsely indicated the presence of blood while concealing the negative results of confirmatory tests.

f. Defendant Black intentionally and knowingly misrepresented evidence to the Court using the false and misleading serology report.

133. In conspiring to violate Allen's constitutional rights, Defendants Elwell and Black acted with reckless indifference to Allen's constitutional rights.

134. When they conspired to violate Allen's constitutional rights, Defendants Elwell and Black could reasonably foresee that their conspiracy would result in Allen's conviction and subsequent imprisonment.

135. The conspiracy between Defendants Elwell and Black was a direct and proximate cause of Allen's conviction and subsequent imprisonment.

136. As a result of the conspiracy between Defendants Elwell and Black, Allen was wrongfully imprisoned for almost thirteen years for a crime he did not commit.

137. The conspiracy between defendants Elwell and Black deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

138. Because Defendants Elwell and Black conspired to deprive Allen of his constitutional rights, they are each liable in their individual capacities to Allen for compensatory damages under 42 U.S.C. 1983.

## F. CLAIMS UNDER 42 U.S.C. 1983 AGAINST GILLIAM, IN HIS INDIVIDUAL CAPACITY FOR VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

### COUNT I – Defendant Gilliam Intentionally Misrepresented Evidence

139. Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

140. At all times relevant to this action, Defendant Gilliam was employed by the City of Durham with the Durham Police Department.

141. At all times relevant to this action Defendant Gilliam was acting within the course and scope of his employment as an officer with the Durham Police Department.

142. Defendant Gilliam reviewed statements made by Kia Ward, a witness in the investigation into the death of Adesha Artis.

143. Defendant Gilliam knew that Kia Ward had engaged in a sexual relationship with Derrick Allen and considered him her enemy.

144. Defendant Gilliam caused a polygraph examination to be conducted upon Kia Ward.

145. Defendant Gilliam met with Defendant Black to determine what specific questions to pose to Kia Ward during her polygraph examination and submitted these questions by secret memo to the State Bureau of Investigation.

146. Defendant Gilliam knew that the failure to ask the following two questions and/or the failure to include these questions in the result of the polygraph that determined Kia Ward was "not deceptive" was exculpatory information to which Derrick Allen was entitled. Those questions were: "Did you (Kia Ward) do anything to harm Adesha Artis' vagina?" and "Have you been truthful with Investigator Gilliam?" The import of these two questions cannot be disregarded by anyone objectively seeking the truth in this matter.

147. Defendant Gilliam knew and intended that the polygraph of Kia Ward was incomplete and/or misleading.

148. Defendant Gilliam misrepresented evidence concerning the statements of a key witness against Derrick Allen.

149. Defendant Gilliam intentionally misrepresented the evidence against Derrick Allen by directing the polygraph of a key witness, Kia Ward, by secret memo to the SBI that did not include questions relevant to the witness' involvement in harming the victim, bias against Allen or truthfulness to investigators.

150. Defendant Gilliam intentionally misrepresented evidence against Derrick Allen by falsely reporting the results of the polygraph of Kia Ward.

151. In intentionally misrepresenting the serology report and polygraph test results, Defendant Gilliam acted with reckless indifference to Allen's constitutional rights.

152. Defendant Gilliam could reasonably foresee that his intentional misrepresentation of evidence would induce Derrick Allen in making an Alford plea.

153. Defendant Gilliam could also reasonably foresee that his intentional misrepresentation of evidence would result in Allen's conviction and imprisonment.

154. Defendant Gilliam's intentional misrepresentation of the evidence against Derrick Allen was a direct and proximate cause of his conviction and subsequent imprisonment.

155. Defendant Gilliam was acting under color of law when he intentionally misrepresented the evidence against Allen and created the false and misleading serology report.

156.    Defendant Gilliam's intentional misrepresentation of evidence deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

157.    Because Defendant Gilliam intentionally misrepresented evidence against Allen, Defendant Gilliam is liable in his individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

## G. CLAIMS UNDER 42 U.S.C. 1983 AGAINST GILLIAM, IN HIS OFFICIAL CAPACITY, FOR VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

158.    Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

159.    In his capacity as a Durham police officer, Defendant Gilliam had received training regarding the statutory and constitutional requirement for law enforcement officers to provide exculpatory evidence to defendants in criminal cases.

160.    Defendant Gilliam should have known that the statements of Kia Ward were exculpatory material subject to discovery pursuant to *Brady v. Maryland* after she disclosed that she considered Allen her enemy.

161.    Defendant Gilliam have known that the results of the polygraph of Kia Ward was exculpatory evidence required to be disclosed to Derrick Allen. Moreover, Defendant Gilliam knew or should have known that the failure to ask the following two questions and/or the failure to include these questions in the result of the polygraph that determined Kia Ward was "not deceptive" was exculpatory information to which Derrick Allen was entitled. Those questions were: "Did you (Kia Ward) do anything to harm Adesha Artis' vagina?" and "Have you been truthful with Investigator Gilliam?"

162.    The training Defendant Gilliam received was inadequate and insufficient to equip Defendant Gilliam and other officers of the Durham Police Department with the requisite knowledge to understand the constitutional requirement to produce exculpatory evidence to criminal defendants and to comply with said requirement by producing and disclosing said exculpatory information as required by the Constitution of the United States.

163.    In light of the specific duties of police officers, particularly investigators and detectives, the need for more and/or different training was so obvious as to amount to reckless indifference on the part of the Durham Police Department and the City of Durham to the constitutional rights or persons charged with criminal offenses in Durham County, North Carolina.

164.    In intentionally withholding this exculpatory evidence from Allen, Defendant Gilliam acted with reckless indifference to Allen's constitutional rights.

165.    Absent additional training on the constitutional requirement to produce and disclose exculpatory evidence pursuant to *Brady v. Maryland* and its progeny, it was highly predictable and even likely, that police officers, investigators and detectives of the Durham Police Department would be make incorrect Brady decisions as a result.

166.    In fact, it was so predictable that failing to adequately train the officers, investigators and detectives of the Durham Police Department amounted to conscious disregarded for Allen's and other defendants' constitutional rights by the Durham Police Department and the City of Durham.

167.    Defendant Gilliam, as an investigator with the Durham Police Department was merely implementing the department's custom, policy, and practice of consciously ignoring or acting with reckless indifference to the constitutional rights of criminal defendants to receive exculpatory evidence.

168.    The Durham Police Department and the City of Durham failed to train its employees concerning a clear constitutional duty implicated in recurrent situations employees, particular investigators and detectives were certain to face

169.    The Durham Police Department and City of Durham were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion in disclosing exculpatory evidence to criminal defendants in Durham County.

170.    This is evidenced by the police department's pattern and practice of either failing to preserve evidence that is exculpatory, failing to disclose laboratory and forensic test results that are exculpatory, failing to disclose witness statements that are exculpatory and failing to disclose polygraph test results that are exculpatory.

171.    The Durham Police Department and the City of Durham knew or should have known that Defendant Gilliam received inadequate or improper training by supervisors at the Durham Police Department such that he was not aware of his obligation to produce exculpatory evidence to Derrick Allen.

172.    The Durham Police Department and the City of Durham knew or should have known that Defendant Gilliam received inadequate or improper training by supervisors at the Durham Police Department such that he consciously determined that he was not required to produce exculpatory evidence to Derrick Allen.

173.    The Durham Police Department and the City of Durham failed to properly train, re-train and/or supervise Defendant Gilliam such that he failed to produce exculpatory evidence to Derrick Allen in violation of Allen's rights under the Constitution of the United States.

174.    As a direct result of the inadequate training of Defendant Gilliam, the constitutional rights of Allen to receive exculpatory evidence were violated and he was irreparably and immeasurably harmed thereby in that he was unjustly

incarcerated for a period of more than twelve and one-half years.

175.  The employees, agents, supervisors, officers and directors of the Durham Police Department and the City of Durham engaged in a pattern and course of behavior designed to intentionally mislead, inaccurately report and to obfuscate and withhold exculpatory evidence in one or more criminal cases investigated by the Durham Police Department.

176.  As a direct result of the pattern and course of behavior of the employees, agents, supervisors, officer and directors of the Durham Police Department and the City of Durham, Derrick Allen was deprived of his liberty in violation of the Fourteenth Amendment to the United States Constitution.

177.  Because Defendant Gilliam failed to disclose exculpatory evidence to Allen, Defendant Gilliam is liable in his official capacity to Allen for compensatory damages under 42 U.S.C. 1983.

## II. STATE LAW

### A. CLAIMS UNDER THE NORTH CAROLINA CONSTITUTION

#### COUNT I – Defendant Elwell's Intentional Misrepresentation Of Evidence

178.  Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

179.  At all times relevant to this action, Defendant Jennifer Elwell was employed by the State of North Carolina with the State Bureau of Investigation in the serology unit.

180.  In her capacity as a serologist with the State Bureau of Investigation, Defendant Elwell was responsible for conducting tests on physical evidence to determine the presence of blood and other substances.

181.  Defendant Elwell conducted tests on the clothing and panties of Adesha Artis.

182.  Defendant Elwell reported that testing on the child's underwear had shown chemical indications of blood. However, her report failed to say that subsequent confirmatory tests were negative for blood and the stains were dilute.

183.  Defendant Elwell, intentionally misrepresented the evidence against Derrick Allen by creating a false and misleading report that indicated that there was blood on the child victim's clothing and panties.

184.  In intentionally misrepresenting this evidence and creating the false and misleading report, Defendant Elwell acted with reckless indifference to Allen's constitutional rights.

185.    Defendant Elwell's intentional misrepresentation of the evidence against Derrick Allen was a direct and proximate cause of his conviction and subsequent imprisonment.

186.    Defendant Elwell's intentional misrepresentation of evidence and creation of a false and misleading report deprived Allen of his liberty without due process of law in violation of the his rights under the North Carolina Constitution, including but not limited to his rights under Article I, Section 19 and Article I, Section 21.

187.    Because Defendant Elwell intentionally misrepresented evidence against Allen and created a false and misleading serology report, Defendant Elwell is liable in her official capacity to Allen for compensatory damages under the North Carolina Constitution.

188.    Defendant Elwell had a continuing duty as an SBI employee to correct the false and misleading report that she submitted. That obligation began on the day she submitted her report and continued every day, month and year that Derrick Allen was in jail and for as long as Defendant Elwell was employed by the State of North Carolina.

189.    In each year after Allen's conviction, from 1998 through and including 2010, Defendant could have and would have obtained post-conviction relief and avoided additional time in prison if Defendant Elwell had corrected the laboratory report and disclosed the negative results of confirmatory tests.

190.    Defendant Elwell's intentional failure to correct the false and misleading serology report in each year from 1998 and 2010 deprived Allen of his liberty without due process of law in violation of his rights under the North Carolina Constitution, including but not limited to his rights under Article I, Section 19 and Article I, Section 21.

191.    Because Defendant Elwell's intentionally failed to correct the false and misleading serology report in each year from 1998 through 2010, Defendant Elwell is liable in her official capacity to Allen for compensatory damages under the North Carolina Constitution.

**COUNT II – Defendant Elwell's Failure To Disclose Exculpatory Evidence**

192.    Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

193.    The serology report created and submitted by Defendant Elwell intentionally omitted the results of confirmatory tests on the clothing and panties of Adesha Artis.

194.    The results of these confirmatory tests showed were negative for the presence of blood and showed that the stains were dilute.

195.    Defendant Elwell intentionally withheld exculpatory evidence by failing to disclose in her report that the confirmatory tests on the victim's clothing and panties were negative for the presence of blood.

196.    In withholding exculpatory evidence from Allen, Defendant Elwell acted with reckless indifference to Allen's constitutional rights.

197.    Defendant Elwell's intentional withholding of exculpatory evidence from Derrick Allen was a direct and proximate cause of his conviction and subsequent imprisonment.

198.    Defendant Elwell's intentional withholding of exculpatory evidence deprived Allen of his liberty without due process of law in violation of his rights under the North Carolina Constitution, including but not limited to his rights under Article I, Section 19 and Article I, Section 21.

199.    Because Defendant Elwell intentionally withheld exculpatory evidence from Allen, Defendant Elwell is liable in her official capacity to Allen for compensatory damages under the North Carolina Constitution.

200.    Defendant Elwell had a continuing duty as an SBI employee to disclose the existence of exculpatory evidence to Allen or his legal counsel. That obligation began on the day she withheld the exculpatory test results and continued every day, month and year that Derrick Allen was in jail and for as long as Defendant Elwell was employed by the State of North Carolina.

201.    Defendant Elwell's intentional failure to disclose the exculpatory test results in each year from 1998 and 2010 deprived Allen of his liberty without due process of law in violation of his rights under the North Carolina Constitution, including but not limited to his rights under Article I, section 19 and Article I, Section 21.

202.    Because Defendant Elwell's intentionally withheld exculpatory evidence in each year from 1998 through 2010, Defendant Elwell is liable in her official capacity to Allen for compensatory damages under the North Carolina Constitution.

**COUNT III – Defendant Nelson's Intentional Misrepresentation of Evidence**

203.    Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

204.    At all times relevant to this action, Defendant Mark Nelson was employed by the State of North Carolina with the State Bureau of Investigation as the Chief of the Serology Section of the SBI Crime Lab.

205. In his capacity as Chief of the Serology Section of the SBI Crime Lab, Defendant Nelson was responsible for the policies, practices and regulations promulgated by the Serology Section.

206. In his capacity as Chief of the Serology Section of the SBI Crime Lab, Defendant Nelson was also responsible for supervising and overseeing the conduct of SBI analysts within the Serology Section, reviewing the results of reports created by analysts within the Serology Section and supervising and overseeing the tests performed within the Serology Section of the SBI Crime Lab.

207. Defendant Nelson encouraged, condoned and approved of the practice of Elwell in creating and submitting official SBI laboratory results that falsely indicated the presence of blood while concealing the negative results of confirmatory tests.

208. Defendant Nelson knew and intended that this practice and custom described hereinabove created a systematic bias in favor of law enforcement and against defendants in criminal cases.

209. Defendant Nelson knew and intended that this practice and custom described hereinabove routinely resulted in a misrepresentation of evidence vital to the administration of justice.

210. Defendant Nelson acted with reckless indifference to Allen's constitutional rights by encouraging, condoning and approving Elwell's practice of intentionally misrepresenting evidence by creating and submitting serology reports that falsely indicated the presence of blood while failing to disclose negative confirmatory test results.

211. By knowingly and intentionally encouraging, condoning and approving Elwell's intentional misrepresentation of evidence and creation of a false and misleading report, Defendant Nelson deprived Allen of his liberty without due process of law in violation of his rights under the North Carolina Constitution, including but not limited to his rights under Article I, Section 19 and Article I, Section 21.

212. Because Defendant Nelson knowingly and intentionally encouraged, condoned and approved Elwell's practice of intentionally misrepresenting evidence, Defendant Nelson is liable in his official capacity to Allen for compensatory damages under the North Carolina Constitution.

213. Defendant Nelson had a continuing duty as the Chief of the Serology Section of the SBI Crime Lab to correct the false and misleading report submitted by analysts under his supervision. That obligation began on the day Elwell submitted her report and continued every day, month and year that Derrick Allen was in jail and for as long as Defendant Nelson was employed by the State of North Carolina.

214. Defendant Nelson's intentional failure to correct the false and misleading serology report created and submitted by Elwell in each year from 1998 and 2010

deprived Allen of his liberty without due process of law in violation of rights under the North Carolina Constitution, including but not limited to his rights under Article I, Section 19 and Article I, Section 21.

215.    Because Defendant Nelson intentionally failed to correct the false and misleading serology report created and submitted by Elwell in each year from 1998 through 2010, in reckless indifference to Allen's constitutional rights, Defendant Nelson is liable in his official capacity to Allen for compensatory damages under the North Carolina Constitution.

## COUNT IV – Defendant Nelson's Failure To Disclose Exculpatory Evidence

216.    Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

217.    As Chief of the Serology Section of the SBI Crime Lab, Defendant Nelson intentionally and in bad faith encouraged, condoned and approved the practice of some SBI analysts, in particular Defendant Elwell, of withholding exculpatory evidence by failing to disclose negative confirmatory test results.

218.    Defendant Nelson could reasonably foresee that his encouragement, condonation and approval of Elwell's practice of withholding exculpatory evidence was a direct and proximate cause of Allen's conviction and subsequent imprisonment.

219.    Because Defendant Nelson intentionally encouraged, condoned and approved Defendant Elwell' s practice of withholding exculpatory evidence, Allen was wrongfully imprisoned for almost thirteen years for a crime he did not commit.

220.    Defendant Nelson was acting under color of law when he encouraged, condoned and approved the practice of intentionally withholding exculpatory evidence.

221.    By knowingly and intentionally encouraging, condoning and approving Elwell's intentional failure to disclose exculpatory evidence, Defendant Nelson deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the united States Constitution.

222.    Because Defendant Nelson knowingly and intentionally encouraged, condoned and approved Elwell's practice of intentionally withholding exculpatory evidence, Defendant Nelson is liable in his individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

223.    Defendant Nelson had a continuing duty as the Chief of the Serology Section of the SBI Crime Lab to disclose material and exculpatory evidence. That obligation began on the day Elwell submitted her report and continued every day, month and year that Derrick Allen was in jail and for as long as Defendant Nelson was employed by the State of North Carolina.

224.   Had Defendant Nelson not encouraged, condoned and approved Defendant Elwell's conduct in intentionally withholding exculpatory evidence, the charges against Allen would have been dismissed and he would have avoided almost thirteen years imprisonment.

225.   In each year after Allen's conviction, from 1998 through and including 2010, Derrick Allen could have and would have obtained post-conviction relief and avoided additional time in prison if Defendant Nelson had acted to disclosure the exculpatory evidence intentionally withheld by Elwell.

226.   Defendant Nelson's intentional failure to disclose material and exculpatory evidence in each year from 1998 and 2010 deprived Allen of his liberty without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

227.   Because Defendant Nelson intentionally failed to disclose exculpatory evidence in each year from 1998 through 2010, in reckless indifference to Allen's constitutional rights, Defendant Nelson is liable in his individual capacity to Allen for compensatory damages under 42 U.S.C. 1983.

**COUNT V – Defendant Black's Intentional Misrepresentation Of Evidence**

203.   Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

204.   At all times relevant to this action, Senior District Attorney Freda Black was employed by then District Attorney James Hardin, Jr. and prosecuted cases by, on behalf of, and in the name of the State of North Carolina.

205.   At all times relevant to this action, Senior Assistant District Attorney Freda Black represented the State of North Carolina in its prosecution of one or more criminal charges against Derrick Allen.

206.   While being employed by the State of North Carolina, Defendant Freda Black represented to the Superior Court, at Derrick Allen's plea hearing, that a factual basis existed for entry of the plea, to wit:  the presence of blood on the clothing and panties of Adesha Artis.

207.   At the time she made such representation to the Court, Defendant Black knew that her representation of the results contradicted the serology test results as she had previously been advised by Defendant Elwell that subsequent tests on the child's clothing and panties were negative for blood.

208.   Defendant Black knew and intended that her statement to the Court regarding the existence of blood on the clothing and panties of the child victim was false and misleading.

209.    When Defendant Black made the statement to the Court she intended to create and did in fact create a false impression of Derrick Allen's guilt.

210.    Prior to making such representation to the Court, Defendant Black directed Defendant Elwell not to include the results of negative confirmatory tests in the official SBI report, even though Defendant Elwell discussed with her the existence of such negative confirmatory test results.

211.    Defendant Black also reviewed statements made by Kia Ward, a witness in the investigation into the death of Adesha Artis, to one or more employees of the Durham Police Department.

212.    Defendant Black, acting in an investigative capacity, then caused a polygraph examination to be conducted upon Kia Ward.

213.    Defendant Black met with Defendant Gilliam to determine what specific questions to pose to Kia Ward during her polygraph examination and submitted these questions by secret memo to the State Bureau of Investigation.

214.    Defendant Black knew that the failure to ask the following two questions and/or the failure to include these questions in the result of the polygraph that determined Kia Ward was "not deceptive" was exculpatory information to which Derrick Allen was entitled. Those questions were:  "Did you (Kia Ward) do anything to harm Adesha Artis' vagina?" and "Have you been truthful with Investigator Gilliam?"  The import of these two questions cannot be disregarded by anyone objectively seeking the truth in this matter.

215.    Defendant Black knew that the State's polygraph of Kia Ward was incomplete and/or misleading.

216.    Defendant Black acted in an investigative capacity to misrepresent evidence regarding the presence or absence of blood on the victim's clothing and panties.

217.    Defendant Black acted in an investigative capacity to misrepresent evidence concerning the statements of a witness against Derrick Allen.

218.    Defendant Black intentionally misrepresented the evidence against Derrick Allen by directing that negative confirmatory test results be omitted from the official SBI serology report.

219.    Defendant Black intentionally misrepresented evidence against Derrick Allen by directing the polygraph of a key witness, Kia Ward, by secret memo to the SBI that did not include questions relevant to the witness' involvement in harming the victim, bias against Allen or truthfulness to investigators.

220.    Defendant Black intentionally misrepresented evidence against Derrick Allen by falsely reporting the results of the polygraph of Kia Ward.

221. In intentionally misrepresenting the serology report and polygraph test results, Defendant Black acted with reckless indifference to Allen's constitutional rights.

222. Defendant Black's intentional misrepresentation of the evidence against Derrick Allen was a direct and proximate cause of his conviction and subsequent imprisonment.

223. Defendant Black's intentional misrepresentation of evidence deprived Allen of his liberty without due process of law in violation of his rights under the North Carolina Constitution, including but not limited to Article I, Section 19 and Article I, Section 21.

224. Because Defendant Black intentionally misrepresented evidence against Allen, Defendant Black is liable in her official capacity to Allen for compensatory damages under the North Carolina Constitution.

**COUNT VI - Defendant Black's Failure To Disclose Exculpatory Evidence**

225. Each and every paragraph hereinabove, both numbered and unnumbered is hereby re-alleged and incorporated herein by reference as if fully set forth.

226. Defendant Black knew that she had an affirmative duty to provide all exculpatory evidence to Derrick Allen, including the results that showed that subsequent tests on the child victim's clothing and panties were negative for blood.

227. At all times relevant to this action, Defendant Black was an experienced prosecutor who was thoroughly familiar with and knowledgeable about relevant case law, specifically, the affirmative duty under *Brady v. Maryland*, and its progeny to provide exculpatory evidence to defendants in criminal case.

228. Defendant Black knew that a report showing that confirmatory tests on a victim's clothing that was negative for the presence of blood was exculpatory evidence as this was clearly established by case law prior to 1998.

229. Defendant Black knew that the statements of Kia Ward were exculpatory material subject to discovery pursuant to *Brady v. Maryland* after she disclosed that she considered Mr. Allen her enemy as this was clearly established by case law prior to 1998.

230. In addition to her duty under the North Carolina Constitution, Defendant Black knew that she had an ethical duty as a member of the North Carolina State Bar to provide all exculpatory evidence to Derrick Allen, including the results that showed that subsequent tests on the child's clothing and panties were negative for blood, the statements of Kia Ward and the questions and results of the polygraph examination of Kia Ward.

231.	Defendant Black knew that she was intentionally violating the Rules of Professional Conduct which govern the individual conduct of attorneys, including prosecutors who might otherwise enjoy immunity from liability in their official capacities.

232.	Defendant Black knew that the results of the polygraph of Kia Ward were exculpatory evidence that she was required to be disclosed to Derrick Allen.

233.	Defendant Black, knew that her intentional withholding of exculpatory evidence violated Allen's rights under the Constitution of the United States.

234.	Defendant Black's intentional withholding of exculpatory evidence was a direct and proximate cause of Allen's conviction and subsequent imprisonment.

235.	Defendant Black's intentional withholding of exculpatory evidence deprived Allen of his liberty without due process of law in violation of his rights under the North Carolina Constitution, including but not limited to his rights under Article I, Section 19 and Article I, Sections 21.the Fourteenth Amendment to the United States Constitution.

236.	Because Defendant Black intentionally withheld exculpatory evidence from Allen, Defendant Black is liable in her official capacity to Allen for compensatory damages under the North Carolina Constitution.

**COUNT VII – Defendant Gilliam's Failure To Disclose Exculpatory Evidence**

237.	Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

238.	At all times relevant to this action, Defendant Gilliam was employed by the City of Durham with the Durham Police Department.

239.	At all times relevant to this action Defendant Gilliam was acting within the course and scope of his employment as an officer with the Durham Police Department.

240.	Defendant Gilliam reviewed statements made by Kia Ward, a witness in the investigation into the death of Adesha Artis.

241.	Defendant Gilliam knew that Kia Ward had engaged in a sexual relationship with Derrick Allen and considered him her enemy.

242.	Defendant Gilliam caused a polygraph examination to be conducted upon Kia Ward.

243.	Defendant Gilliam met with Defendant Black to determine what specific questions to pose to Kia Ward during her polygraph examination and submitted these questions by secret memo to the State Bureau of Investigation.

244. Defendant Gilliam knew that the failure to ask the following two questions and/ or the failure to include these questions in the result of the polygraph that determined Kia Ward was "not deceptive" was exculpatory information to which Derrick Allen was entitled. Those questions were: "Did you (Kia Ward) do anything to harm Adesha Artis' vagina?" and "Have you been truthful with Investigator Gilliam?" The import of these two questions cannot be disregarded by anyone objectively seeking the truth in this matter.

245. Defendant Gilliam knew and intended that the polygraph of Kia Ward was incomplete and/or misleading.

246. Defendant Gilliam misrepresented evidence concerning the statements of a key witness against Derrick Allen.

247. Defendant Gilliam intentionally misrepresented the evidence against Derrick Allen by directing the polygraph of a key witness, Kia Ward, by secret memo to the SBI that did not include questions relevant to the witness' involvement in harming the victim, bias against Allen or truthfulness to investigators.

248. Defendant Gilliam intentionally misrepresented evidence against Derrick Allen by falsely reporting the results of the polygraph of Kia Ward.

249. In intentionally misrepresenting the serology report and polygraph test results, Defendant Gilliam acted with reckless indifference to Allen's constitutional rights.

250. Defendant Gilliam's intentional misrepresentation of the evidence against Derrick Allen was a direct and proximate cause of his conviction and subsequent imprisonment.

251. Defendant Gilliam's intentional misrepresentation of evidence deprived Allen of his liberty without due process of law in violation of his rights under the North Carolina Constitution, including but not limited to his rights under Article I, Section 19 and Article I, Section 21. he Fourteenth Amendment to the United States Constitution.

252. Because Defendant Gilliam intentionally misrepresented evidence against Allen, Defendant Gilliam is liable in his official capacity to Allen for compensatory damages under the North Carolina Constitution.

### COUNT VIII – Conspiracy of Elwell and Nelson

253. Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

254. As set forth in detail hereinabove, Defendants Elwell and Nelson acted jointly and in concert with the intention of depriving Derrick Allen of his constitutional rights.

255.    Beginning in 1998 and continuing through the remainder of their employment with the SBI, Defendants Elwell and Nelson, conspired to violate Allen's rights under the North Carolina Constitution.

256.    The acts in furtherance of the conspiracy include, but are not limited to:

   a.   Defendant Elwell produced and submitted the false and misleading serology report.

   b.   Defendant Elwell falsely affirmed that "This report represents a true and accurate result of my analysis of the item(s) described."

   c.   Defendant Nelson encouraged, condoned and approved Elwell's practice of creating and submitting reports that falsely indicated the presence of blood while concealing the negative results of confirmatory tests.

257.    The conspiracy between Defendants Elwell and Nelson was a direct and proximate cause of Allen's conviction and subsequent imprisonment.

258.    As a result of the conspiracy between Defendants Elwell and Nelson, Allen was wrongfully imprisoned for almost thirteen years for a crime he did not commit.

259.    The conspiracy between defendants Elwell and Nelson deprived Allen of his liberty without due process of law in violation of his rights under the North Carolina Constitution, including but not limited to his rights under Article I, Section 19 and Article I, Section 21.

260.    Because Defendants Elwell and Nelson conspired to deprive Allen of his constitutional rights, they are each liable in their official capacities to Allen for compensatory damages under the North Carolina Constitution.

**COUNT VIII – Conspiracy of Elwell and Black**

261.    Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

262.    As set forth in detail hereinabove, Defendants Elwell and Black acted jointly and in concert with the intention of depriving Derrick Allen of his constitutional rights.

263.    Beginning in 1998, Defendants Elwell and Black, conspired to violate Allen's rights under the North Carolina Constitution.

264.    The acts in furtherance of the conspiracy include, but are not limited to:

a. Defendant Elwell conducted the tests on the clothing and panties of the child victim and advised Defendant Black about the negative confirmatory test results.

b. Defendant Black directed Defendant Elwell not to include the confirmatory test results in the official SBI report.

c. Defendant Elwell produced and submitted the false and misleading serology report.

d. Defendant Elwell falsely affirmed that "This report represents a true and accurate result of my analysis of the item(s) described."

e. Defendant Black requested, encouraged, condoned and approved Elwell's creation and submission of the report that falsely indicated the presence of blood while concealing the negative results of confirmatory tests.

f. Defendant Black intentionally and knowingly misrepresented evidence to the Court using the false and misleading serology report.

265. The conspiracy between Defendants Elwell and Black was a direct and proximate cause of Allen's conviction and subsequent imprisonment.

266. As a result of the conspiracy between Defendants Elwell and Black, Allen was wrongfully imprisoned for almost thirteen years for a crime he did not commit.

267. The conspiracy between Defendants Elwell and Black deprived Allen of his liberty without due process of law in violation of his rights under the North Carolina Constitution, including but not limited to his rights under Article I, Section 19 and Article I, Section 21.

268. Because Defendants Elwell and Black conspired to deprive Allen of his constitutional rights, they are each liable in their official capacities under the North Carolina Constitution.

**COUNT IX – Obstruction of Justice (Elwell)**

269. Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

270. Elwell prevented, obstructed, impeded and hindered public or legal justice by engaging in the acts set forth above, including but not limited to:

a. Intentionally misrepresenting evidence against Allen by creating and submitting an official SBI serology report that she knew and intended to be false and misleading.

b. Intentionally withholding exculpatory evidence by failing to disclose in the SBI serology report that she obtained negative results on confirmatory tests of the child victim's clothing and panties.

c. In each year from 1998 through 2010, intentionally failing to disclose the misrepresentation of evidence and withholding of exculpatory evidence.

d. In such other ways as may be shown by the evidence at trial.

271. As a direct, proximate and foreseeable cause of Elwell's obstruction of justice, Allen was deprived of his liberty and imprisoned for almost thirteen years for a crime he did not commit.

### COUNT X – Obstruction of Justice (Nelson)

272. Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

273. Nelson prevented, obstructed, impeded and hindered public or legal justice by engaging in the acts set forth above, including but not limited to:

a. Intentionally encouraging, condoning and approving the practice of SBI analysts, including Elwell, of misrepresenting evidence by creating and submitting an official SBI serology reports that falsely indicated the presence of blood despite negative confirmatory test results.

b. Encouraging, condoning and approving the practice of some analysts, including Elwell of withholding exculpatory evidence by failing to disclose the existence of negative results on confirmatory test results.

c. In each year from 1998 through 2010, intentionally failing to disclose the misrepresentation of evidence and withholding of exculpatory evidence.

d. In such other ways as may be shown by the evidence at trial.

e. As a direct, proximate and foreseeable cause of Nelson's obstruction of justice, Allen was deprived of his liberty and imprisoned for almost thirteen years for a crime he did not commit.

### COUNT IX – Obstruction of Justice (Black)

274. Each and every paragraph hereinabove, both numbered and unnumbered, is hereby re-alleged and incorporated herein by reference as if fully set forth.

275. Black prevented, obstructed, impeded and hindered public or legal justice by engaging in the acts set forth above, including but not limited to:

a. Intentionally misrepresenting evidence against Allen by directing Elwell to create and submit an official SBI serology report that she and Elwell knew and intended to be false and misleading.

b. Intentionally representing to the Court that the false and misleading serology report submitted by Elwell was an accurate representation of the evidence against Allen.

c. Intentionally representing to the Court that a factual basis existed for the entry of Allen's Alford plea, to wit: the presence of blood on the child victim's clothing and panties when she knew this in fact to be false and intended said representation to create a false impression of guilt.

d. Intentionally representing to the Allen and his defense counsel that a factual basis existed for the entry of Allen's Alford plea, to wit: the presence of blood on the child victim's clothing and panties when she knew this in fact to induce Allen to accept an Alford plea.

e. Intentionally withholding exculpatory evidence by failing to disclose the existence of negative results on confirmatory tests of the child victim's clothing and panties.

f. Intentionally withholding exculpatory evidence by not providing the witness statements and complete polygraph tests results of Kia Ward to Allen or his defense counsel.

g. In each year from 1998 through 2010, intentionally failing to disclose the misrepresentation of evidence and withholding of exculpatory evidence.

h. In such other ways as may be shown by the evidence at trial.

276. As a direct, proximate and foreseeable cause of Black's obstruction of justice, Allen was deprived of his liberty and imprisoned for almost thirteen years for a crime he did not commit.

i. the existence of negative results on confirmatory tests of the child victim's clothing and panties.

j. Intentionally withholding exculpatory evidence by not providing the witness statements and complete polygraph tests results of Kia Ward to Allen or his defense counsel.

k. In each year from 1998 through 2010, intentionally failing to disclose the misrepresentation of evidence and withholding of exculpatory evidence.

l. In such other ways as may be shown by the evidence at trial.

277. As a direct, proximate and foreseeable cause of Black's obstruction of justice, Allen was deprived of his liberty and imprisoned for almost thirteen years for a crime he did not commit.

## CONCLUSION AND PRAYER FOR RELIEF

278. As a direct result of each of the defendants' violation of Allen's civil and constitutional rights and obstruction of justice, Derrick Allen was wrongfully convicted of murder, imprisoned each year from 1998 until 2010 for a crime he did not commit and sustained personal injuries which resulted in substantial damages each year from 1998 to 2010. These include, but are not limited to inadequate medical treatment, pain and suffering, severe mental anguish, emotional distress, humiliation, indignities, embarrassment, degradation, restrictions on all forms of personal freedom, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, family relations, television, travel, enjoyment and expression.

279. Defendants are jointly and severally liable in their individual capacities to Allen for compensatory damages resulting from the violation of his civil and constitutional rights and obstruction of justice.

280. Defendant Gilliam is liable to Allen in his official capacity for compensatory damages resulting from the violation of his civil and constitutional rights.

281. Defendants Elwell, Nelson and Black are jointly and severally liable in their official capacities to Allen for compensatory damages resulting from the violation of his rights under the North Carolina Constitution.

282. Beyond compensating Derrick Allen for the twelve and one half years he spent in custody, this action seeks to redress the unlawful official policies, practices and/ or customs that caused Defendants' violations of Allen's constitutional rights as guaranteed by the United States Constitution and the Constitution and laws of the State of North Carolina.

Based on the foregoing, Allen prays for the following relief:

1. That Plaintiff have and recover compensatory damages from defendants, jointly and severally, in an amount to be determined at trial;

2. That Plaintiff have and recover reasonable attorney's fees and litigation costs and expenses from these Defendants, collectively and each of them;

3. Court costs and interest as allowed by law;

4. A trial by jury on all contested issues of fact;

5. Such other and further relief as this Court deems just and proper.

This the _10_ day of _MARCH_ , 2014.

_Derrick M. Allen_

Derrick Allen – *Pro Se*

STATE OF NORTH CAROLINA

**VERIFICATION**

COUNTY OF DURHAM

Derrick Allen, being first duly sworn, deposes and says that he is the Plaintiff in the foregoing action and that he has read the preceding pages and knows the contents thereof and that the same are true to his knowledge, except as to those matters stated upon information and belief, and as to those matters, he believes them to be true.

*[signature]*

Derrick Allen

Subscribed and sworn to before me this the _1𝛿_ day of _March_ , 2014.

By: *[signature]* Daniel P Lobczowski
    Notary Public

My Commission Expires: Feb. 13, 2018

*[Notary Seal: DANIEL P. LOBCZOWSKI, NOTARY PUBLIC, FORSYTH COUNTY, NC]*