# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DERRICK ALLEN,                          )
                                        )
              Plaintiff,                )
                                        )
       v.                               )        1:19cv766
                                        )
JENNIFER ELWELL,                        )
                                        )
              Defendant.                )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the Court on (i) the "Motion to Dismiss by Defendant Elwell" (Docket Entry 37) (the "Dismissal Motion"); (ii) "Plaintiff's Motion for Leave to File Second Amended Complaint" (Docket Entry 41) (the "Amendment Motion"); (iii) "Plaintiff's Motion for Extension of Time for Service of Process Under Fed. R. Civ. P. 4(m) or Fed. R. Civ. P. 6(b)" (Docket Entry 42) (the "Extension Motion"); (iv) the "Motion to Withdraw as Plaintiff's Counsel (B. Tyler Brooks)" (Docket Entry 45) (the "Withdrawal Motion"); and (v) the Oral Motion to Appoint Counsel (Oral Motion dated Sept. 30, 2022) (the "Appointment Motion") by Derrick Allen (the "Plaintiff"). For the reasons that follow, the Court (i) should grant the Dismissal Motion; (ii) will deny the Amendment Motion;[1] (iii) will deny as moot the Extension Motion;

---

1 For reasons stated in <u>Deberry v. Davis</u>, No. 1:08cv582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010), the undersigned United States Magistrate Judge will enter an order, rather than a recommendation, as to the Amendment Motion. <u>See also</u> <u>Everett v. Prison Health Servs.</u>, 412 F. App'x 604, 605 & n.2 (4th Cir. 2011)

(iv) will grant the Withdrawal Motion; and (v) will deny the Appointment Motion.

**BACKGROUND**

Alleging that he "was wrongfully imprisoned for crimes [he] did not commit" (Docket Entry 2 (the "Complaint") at 6),[2] Plaintiff filed a pro se Complaint on July 29, 2019, against Jennifer Elwell (at times, the "Defendant"), a laboratory technician at the North Carolina State Bureau of Investigation (the "SBI"), and other individuals involved in his investigation and prosecution for murder and other offenses in 1998 and 1999. (See generally id. at 1-49.) Plaintiff included in his Complaint a pleading (bearing case number 14 CVS 2248) which he filed against many of the same individuals, including Defendant, in North Carolina state court on March 10, 2014. (See id. at 9-49 (the "State Court Complaint").) In conjunction with his Complaint, Plaintiff filed an "Application to Proceed in District Court Without Prepaying Fees or Costs." (Docket Entry 1 (the "IFP Application") at 1.) The Court (per the undersigned) granted the IFP Application and, as relevant here,

_____

(explaining that, where the plaintiff "moved for leave to amend her complaint, . . . . the magistrate judge denied [that] motion," and the plaintiff "timely objected, thereby preserving the issue for review by the district court," the district court "could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was clearly erroneous or contrary to law" (internal quotation marks omitted) (citing 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a))).

2  Docket Entry page citations utilize the CM/ECF footer's pagination.

recommended dismissal of the Complaint under 28 U.S.C. § 1915(e)(2)(B) for "seeking monetary relief from immune defendants, and/or frivolously bringing claims obviously barred by the statute of limitations" on the grounds that "Plaintiff's claims against Defendant [and certain others] in their official capacities constitute claims against the State, not a 'person' as required under Section 1983, . . . and Plaintiff obviously failed to allege his claims within the applicable statute of limitations period." (Docket Entry 4 at 15.)

Plaintiff objected to the recommendation of dismissal. (See Docket Entry 6 at 1-5.) In particular, Plaintiff asserted that "[t]he charges against [him] were dismissed on October 25, 2016," rendering his Complaint timely. (Id. at 4; see also id. at 6-11 (state-court filings reflecting dismissal of charges against Plaintiff on October 25, 2016).) In addition, "[i]f the [Court] conclude[d that] the Complaint filed July 29, 2019, should be amended to include the specific allegations in the accompanying S[tate] Court [C]omplaint in a single document and/or to allege the criminal charges were not dismissed until October 25, 2016, Plaintiff respectfully request[ed] leave to file an Amended Complaint." (Id. at 4-5.) Accordingly, the undersigned "direct[ed] Plaintiff to file any amended complaint by [May 20, ]2020." (Text Order dated Apr. 20, 2020.)

Plaintiff timely filed an Amended Complaint against Defendant and others, asserting that they violated his rights under the Fourteenth Amendment. (See Docket Entry 15.) In light of the Amended Complaint, the undersigned terminated the prior recommendation of dismissal and "recommend[ed] that the Court dismiss [the] Amended Complaint for failure to state a claim and for seeking damages against an immune defendant, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii), for the same basic reasons stated in [the original r]ecommendation, as supplemented herein, except the claim against Defendant Jennifer Elwell under 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment based on her alleged intentional preparation of a false laboratory report as to the presence of blood on the underwear of the victim resulting in Plaintiff's conviction." (Text Order and Recommendation dated Sept. 28, 2021 (the "Recommendation").) The Recommendation then explained that the Amended Complaint "failed to state a claim against . . . Defendant[ and others] in their official capacities (as employees of [other defendant agencies]), because those arms of the state do not qualify as persons under Section 1983." (Id.) Finally, the Recommendation concluded that the Amended Complaint

> fail[ed] to state a claim against Defendant Elwell other
> than for her alleged intentional preparation of a false
> laboratory report as to the presence of blood on the
> underwear of the victim resulting in Plaintiff's
> conviction, because [the] Amended Complaint otherwise
> relies solely on conclusory allegations of conspiracy

4

and/or any other violation(s) of Plaintiff's federal
constitutional rights.

(Id. (parenthetical omitted).)

The Court (per Chief United States District Judge Thomas D.

Schroeder) adopted the Recommendation and dismissed the Amended

Complaint,

> pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii),
> except the claim against Defendant Jennifer Elwell under
> 42 U.S.C. § 1983 for violation of the Due Process Clause
> of the Fourteenth Amendment based on her alleged
> intentional preparation of a false laboratory report as
> to the presence of blood on the underwear of the victim
> resulting in Plaintiff's conviction.

(Docket Entry 19 at 1-2.)[3]  The Court (per the undersigned) then

entered an order

> directing the Clerk to send Plaintiff a summons form for
> the lone remaining Defendant and requiring Plaintiff to
> properly complete the summons form (including with an
> address suitable for service of process) and return it to
> the Clerk by [April 15, ]2022.  If Plaintiff timely
> returns a properly completed summons form for the lone
> remaining Defendant, the Clerk shall issue the summons
> and shall forward it (along with any other documents
> necessary for service of process) to the United States
> Marshals Service, which shall make service of process.

(Text Order dated Mar. 25, 2022.)

Plaintiff timely provided a summons form addressed to

Defendant at the "State Crime Lab" in Raleigh, North Carolina.

(Docket Entry 26 at 1 (all-cap font omitted).)  The United States

---

3  Plaintiff pursued an interlocutory appeal of this ruling,
but the United States Court of Appeals for the Fourth Circuit
dismissed the appeal for lack of jurisdiction. (See Docket Entries
20-25.)

Marshals Service served the summons via certified mail, return receipt requested. (See Docket Entry 28 at 1-3.) On April 1, 2022, an individual (with an illegible signature) signed the delivery confirmation receipt, identifying him-or-herself as an "Agent" rather than the "Addressee." (Id. at 2.) On April 20, 2022, the Marshals Service filed a "Process Receipt and Return" (the "Return") detailing that service of process. (See id. at 1-3.) On May 10, 2022, Plaintiff moved for entry of default (see Docket Entry 29 at 1), which the Clerk entered the following day (see Docket Entry 30 at 1). Thereafter, Defendant moved to set aside the default (see Docket Entry 32 at 1), a request the Court (per the undersigned) granted (see Text Order dated Aug. 23, 2022).

In the interim, on August 12, 2022, attorney B. Tyler Brooks ("Plaintiff's Counsel") appeared on Plaintiff's behalf. (See Docket Entry 36 at 1.) Defendant then moved to dismiss the Amended Complaint (see Docket Entry 37; see also Docket Entry 38 (supporting brief)), a request that Plaintiff (through counsel) opposed (see Docket Entry 40). The following day, Plaintiff (through counsel) filed the Amendment Motion (see Docket Entry 41) and, four days later, Plaintiff (through counsel) filed the Extension Motion (see Docket Entry 42). Defendant did not oppose those motions. (See Docket Entries dated Sept. 7, 2022, to present.) The next day, Plaintiff filed a pro se motion to change venue (see Docket Entry 44 ("Plaintiff's Venue Motion") at 1) and

6

Plaintiff's Counsel filed the Withdrawal Motion (see Docket Entry 45; see also Docket Entries 47, 50 (supplementing Withdrawal Motion)). The Court denied Plaintiff's Venue Motion (see Text Order dated Sept. 13, 2022) and conducted a hearing on the Withdrawal Motion (see Minute Entry dated Sept. 30, 2022). At the hearing, Plaintiff "made an Oral Motion to Appoint Counsel if [the Withdrawal Motion] is allowed." (Id.; see also Oral Motion dated Sept. 30, 2022.)

## DISCUSSION

### I. Dismissal Motion

### A. Preliminary Matters

As an initial matter, this action presents one claim: an individual-capacity claim against Defendant "for violation of the Due Process Clause of the Fourteenth Amendment based on her alleged intentional preparation of a false laboratory report as to the presence of blood on the underwear of the victim resulting in Plaintiff's conviction." (Docket Entry 19 at 1-2; see also Text Order and Recommendation dated Sept. 28, 2021.) Thus, Defendant's arguments regarding the need to dismiss Plaintiff's conspiracy and official-capacity claims against Defendant (see Docket Entry 38 at 25-26, 30-31) miss the mark. Defendant's Rooker-Feldman contention, namely that, "[i]f and to the extent the plaintiff has filed this action asking this Court to review state court orders, Plaintiff's claims are barred by the *Rooker Feldman* doctrine and

7

are not within this Court's subject matter jurisdiction" (id. at 29 (stray space omitted); see id. at 28-30), similarly fails to justify any relief. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ("The *Rooker-Feldman* doctrine[] . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

### i. Claim-Related Challenges

"The right alleged by [Plaintiff], defined at the appropriate level of generality, is 'the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.'" Washington v. Wilmore, 407 F.3d 274, 282 (4th Cir. 2005) (quoting Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir. 2000)); see also Taylor v. Deaver, No. 5:11-cv-341, 2012 WL 12905868, at *1-3 (E.D.N.C. Sept. 28, 2012) (finding that "[the plaintiff] has made out a violation of his Fourteenth Amendment rights based on his allegations that [the] defendants[, State Crime Lab serologists like Defendant Elwell,] fabricated evidence in his case" by "prepar[ing] a formal SBI laboratory report that intentionally misrepresented the test results, stating that their examination gave chemical indications for the presence of blood on [certain evidence], when their

8

examination had in fact negated the presence of blood" (internal quotation marks omitted)). This right has been clearly established since at least 1983. <u>See</u> <u>Washington</u>, 407 F.3d at 283-84 (citing <u>Miller v. Pate</u>, 386 U.S. 1, 7 (1967)); <u>see also</u> <u>Miller</u>, 386 U.S. at 7 ("More than 30 years ago th[e Supreme] Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence."); <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959) (explaining that "it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment" and that "[t]he principle that a State may not knowingly use false evidence[] . . . to obtain a tainted conviction[ is] implicit in any concept of ordered liberty").

"Demonstration of a violation of [Plaintiff's] constitutional right requires, in this context, proof that [Defendant Elwell] fabricated evidence and that the fabrication resulted in a deprivation of [Plaintiff's] liberty." <u>Washington</u>, 407 F.3d at 282. In the context of this case, "[t]he proper inquiry . . . is whether [Plaintiff's] conviction was a reasonably foreseeable result of [Defendant Elwell's] act of fabrication." <u>Id.</u> at 283.[4]

---

4 Courts do not require a conviction in all circumstances for a valid fabrication of evidence claim. <u>See</u> <u>Black v. Montgomery Cnty.</u>, 835 F.3d 358, 368-72 (3d Cir. 2016), <u>as amended</u> (Sept. 16, 2016) (explaining that "[t]he legal question before us is whether a plaintiff may pursue a fabricated evidence claim against state

Further, "a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial — none of these decisions will shield a[n investigating official] who deliberately supplied misleading information that influenced the decision." <u>Jones v. City of Chi.</u>, 856 F.2d 985, 994 (7th Cir. 1988).

Because "malicious prosecution provides the closest analogy to [this type of] § 1983 claim[,]" the three-year statute of limitations on Plaintiff's Section 1983 claim against Defendant Elwell began to run "on th[e] date that proceedings against [Plaintiff] were favorably terminated in such manner that they could not be revived." <u>Owens v. Baltimore City State's Att'ys Off.</u>, 767 F.3d 379, 390 (4th Cir. 2014); see also <u>McDonough v. Smith</u>, __ U.S. __, __ – __, 139 S. Ct. 2149, 2154–55 (2019) ("The statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (<i>i.e.</i>, the § 1983 plaintiff) have terminated in his favor."). The state prosecutor dismissed with prejudice the charges against Plaintiff on October 25, 2016. (<u>See</u> Docket Entry

_____

actors under the due process clause of the Fourteenth Amendment even if the plaintiff was never convicted" and holding, "[c]onsistent with other Courts of Appeals that have considered this question, . . . that such a stand-alone fabrication of evidence claim can proceed if there is no conviction" (footnote omitted)) (citing, inter alia, <u>Zahrey</u>, 221 F.3d 342); <u>see also</u> <u>McDonough v. Smith</u>, __ U.S. __, 139 S. Ct. 2149 (2019) (considering fabrication of evidence claim by acquitted individual).

10

6 at 6-11.)[5]  Plaintiff initiated this action on July 29, 2019, within three years of that dismissal. (See Docket Entry 1 at 1-2.) Thus, contrary to Defendant Elwell's contentions (see Docket Entry 38 at 17-19), the statute of limitations does not bar Plaintiff's suit.

Defendant Elwell next asserts that the Amended Complaint remains subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules") for failure to state a claim upon which relief can be granted because:

> Defendant Elwell did not prosecute Plaintiff.  Defendant Elwell did not place make [sic] Plaintiff enter into an Alford Plea.  Defendant Elwell has no authority regarding Plaintiff's criminal case.  Plaintiff, not Defendant Elwell, is empowered to petition the Court, and Defendant Elwell has no role in that.

(Id. at 22 (underscoring added).)  Defendant further contends that Plaintiff lacks standing to pursue this action, on the theory that "[t]here is no evidence of a causal link between Defendant Elwell's action or inaction and Plaintiff's decision to enter an Alford plea." (Id. at 23.)  More specifically, Defendant maintains that "Plaintiff is unable to trace the[] alleged constitutional[] violations to Defendant Elwell[ because] Defendant Elwell does not prosecute crimes." (Id. at 24.)  Finally, Defendant Elwell argues, without appropriate development, that qualified immunity shields

---

5   The Court may take judicial notice of these state court records in resolving the Dismissal Motion.  See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

11

her from Plaintiff's claim, apparently on the doctrine's clearly-established prong.  (See id. at 32-33 (asserting in introductory paragraph that "Plaintiff has failed to allege that in 1998, it was so clearly established that an objectively reasonable officer would know or have reason to know that reporting test results in a particular manner would constitute a violation of Plaintiff's due process rights" and then arguing that Plaintiff cannot pursue official capacity claim against Defendant Elwell).)[6]

According to the Amended Complaint:

As part of her job as an SBI serologist, Defendant Elwell "conducted tests on the clothing and panties of [the decedent child, A.A.]" (Docket Entry 15, ¶ 6) and "reported that test[s] on the child's underwear had shown the chemical indication of blood"

---

6    Strictly speaking, Defendant Elwell thus waived her qualified immunity argument.  See, e.g., Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop [its] argument — even if [its] brief takes a passing shot at the issue." (internal quotation marks omitted) (brackets in original)); see also Hensley on behalf of N.C. v. Price, 876 F.3d 573, 580 n.5 (4th Cir. 2017) (explaining that "a party must do more than take a passing shot at an issue to properly preserve it" and that "[t]he party must actually develop its argument" and finding waiver where "[the defendants'] opening brief contains none of the development required by the rule," as it contained "no argument on the 'clearly established' prong of the qualified immunity test" and "no citation to cases actually applying the 'clearly established' prong of the qualified immunity test" (brackets and certain internal quotation marks omitted)).  As the Fourth Circuit has explained, "courts are not like pigs, hunting for truffles buried in briefs.  Similarly, it is not [the Court's] job to wade through the record and make arguments for either party." Hensley, 876 F.3d at 580 n.5 (citation and internal quotation marks omitted).

(id., ¶ 7). "However, her report fail[ed] to say that subsequent confirmatory test[s] were negative for blood and the stains were diluted." (Id.) "Defendant Elwell intentionally misrepresented the evidence against [Plaintiff] by creating a[] false and misleading report indicating that the[re] was blood on the child victim's clothing and panties." (Id., ¶ 8; see also id., ¶ 92 (asserting that Defendant Elwell told state prosecutor "that subsequent tests on the child's clothing and panties were negative for blood").) At the direction of the state prosecutor, Defendant Elwell did not "include the results of negative confirmatory tests in the official SBI report, even though Defendant Elwell discussed with [the state prosecutor] the existence of such negative confirmatory test results." (Id., ¶ 95; accord id., ¶ 132.) Defendant Elwell "produced and submitted the false and misleading serology report," in which she "falsely affirmed that '[t]his report represents a true and accurate result of [her] analysis of the item(s) described.'" (Id., ¶ 132.) This report "was designed to create a false impression of guilt." (Id., ¶ 23.) The state prosecutor then "represented to the Superior Court, at [Plaintiff's] plea hearing, that a factual b[asis] existed for entry of the plea, to wit: the presence of blood on the clothing and pan[ties] of [A.A.]." (Id., ¶ 91.)

Accordingly, the Amended Complaint plausibly alleges that Defendant Elwell violated Plaintiff's constitutional right not to

be deprived of liberty by fabricated evidence. See Taylor, 2012 WL 12905868, at *1-3 (denying motion to dismiss similar claims against SBI serologists); see also, e.g., Spencer v. Peters, 857 F.3d 789, 798-803 (9th Cir. 2017) (reversing entry of judgment as a matter of law for the defendant and ordering reinstatement of jury verdict on fabrication of evidence claim regarding false reports where "[the p]laintiff's theory of the case — accepted by the jury — was that the fabricated evidence caused him to enter an *Alford* plea, which led to his serving nearly two decades in prison"). Thus, Defendant Elwell's Rule 12(b)(6) and standing arguments (see Docket Entry 38 at 19-25) warrant no relief. Moreover, "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity is a clearly established right and was clearly established from 199[8] through 199[9], the time of the events giving rise to [P]laintiff's claim." Taylor, 2012 WL 12905868, at *3; see also Washington, 407 F.3d at 283-84 (deeming that right clearly established by 1983). As such, qualified immunity does not shield Defendant Elwell from Plaintiff's claim. See Taylor, 2012 WL 12905868, at *3 ("The court, therefore, finds that [the] plaintiff has stated a claim for relief under § 1983 based on [the] defendants' alleged fabrication of evidence and that [the] defendants are not entitled to qualified immunity as to those claims.").

## ii. Service-Related Challenges

Similarly, Defendant's service-related contentions fail to justify dismissal. (See Docket Entry 38 at 11-17.) The Rules permit service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," Fed. R. Civ. P. 4(e)(1). North Carolina state law permits service via certified mail to a defendant's place of employment. See, e.g., Moore v. Cox, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004).

Notably, if the certified mail receipt "[i]s signed by a person other than the addressee, North Carolina presumes 'that the person who received the mail . . . and signed the receipt was an agent of the addressee authorized by appointment or by law to be served or to accept service of process.'" Godfrey v. Long, No. 5:10-ct-3105, 2012 WL 43593, at *5 (E.D.N.C. Jan. 9, 2012) (ellipsis in original) (quoting N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2)), aff'd, 472 F. App'x 174 (4th Cir. 2012); see also Moore, 341 F. Supp. 2d at 573 (observing that "a person authorized to receive mail is an authorized agent for purposes of receiving service of process in North Carolina"). Further,

> "[s]ervice of process, and the return thereof, are serious matters; and the return of a sworn authorized officer should not 'be lightly set aside.' . . . Therefore, th[e North Carolina Supreme] Court has consistently held that an officer's return or a judgment based thereon may not be set aside unless the evidence consists of more than a single contradictory affidavit

15

(the contradictory testimony of one witness) and is clear and unequivocal."

> [An official's] return imports truth, and it "cannot be overthrown or shown to be false by the affidavit, merely, of the person upon whom the service is alleged to have been made. It has often been held that the return of a ministerial officer, as to what he has done out of court, is prima facie true, and cannot be contradicted by a single affidavit (or witness)."

Guthrie v. Ray, 293 N.C. 67, 71, 235 S.E.2d 146, 149 (1977) (ellipsis in original) (citations omitted).

However, "[a] party may rebut th[e] presumption of valid service with 'affidavits of more than one person showing unequivocally that proper service was not made upon the person of the defendant.'" Godfrey, 2012 WL 43593, at *5 (quoting Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996)). Nevertheless, "'[a] defendant who seeks to rebut the presumption of regular service generally must present evidence that service of process failed to accomplish its goal of providing [the] defendant with notice of the suit, rather than simply questioning the identity, role, or authority of the person who signed for delivery of the summons.'" D.B.G. v. Robeson Cnty. Bd. of Educ., No. 7:18-cv-122, 2019 WL 1005195, at *3 (E.D.N.C. Mar. 1, 2019) (quoting Granville Med. Ctr. v. Tipton, 160 N.C. App. 484, 493, 586 S.E.2d 791, 797 (2003)).

Here, the Marshals Service filed a Return verifying service of process via certified mail addressed to Defendant at the State Crime Lab in April 2022. (See Docket Entry 28 at 1-3.) Defendant,

however, avers that, although she worked "[f]or approximately 30 years . . . at the North Carolina State Crime Lab," she had "retired from the State Crime Lab" prior to "April 1, 2022, [when] a Summons and Complaint in this action was [sic] delivered to the State Crime Lab." (Docket Entry 38-1, ¶¶ 2-3.)[7] Per Defendant, "the Certified Mail package containing the Summons and Complaint in this action was left with a receptionist at the State Crime Lab" (id., ¶ 4), who "gave the paperwork to her superiors, who" in turn provided it to Defendant and the North Carolina Attorney General's Office (id., ¶ 6). Defendant maintains that she has never authorized anyone at the State Crime Lab to accept service on her behalf and, as of June 7, 2022, she "ha[d] never been personally served with a copy of the Summons or Complaint in this matter" (id., ¶ 7). (See id., ¶¶ 6-7.) Yet, Defendant failed to provide any affidavits from other individuals corroborating this account. (See Docket Entries 37 to 38-2.) As such, it remains questionable whether Plaintiff adequately rebutted the presumption of valid service that the Return created.

The Court need not resolve this issue, however, for at least three reasons. First, "[d]ismissal [for insufficient service of process] under Rule 12(b)(5) is not justified where it appears that service can be properly made." Plant Genetic Sys., N.V. v. Ciba

---

7 This affidavit contains two separate paragraphs bearing the number 3, two separate paragraphs bearing the number 6, and three separate paragraphs bearing the number 7. (See id. at 1-3.)

Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996) (internal quotation marks omitted). Nothing in the record suggests any impediment to effectuating service on Defendant moving forward (see Docket Entries dated Mar. 25, 2022, to present), particularly given that the Court can enlist defense counsel in either securing a waiver of service or providing updated contact information for Defendant, see, e.g., Alston v. Locklear, No. 1:19cv96, Text Order dated Sept. 10, 2020 (M.D.N.C. 2020) (directing defense counsel, "as an officer of the Court," to assist in providing information necessary for service on defendants, including potentially former state employee, after service challenges and observing that "the Court has hereby required [defense counsel], as an officer of the Court, to take appropriate steps . . . to aid the Court in fulfilling its obligation to assist [the p]laintiff in obtaining service of process on [the relevant d]efendants"); see also, e.g., Alston v. Locklear, No. 1:19cv96, Docket Entry 33 (M.D.N.C. 2020) (verifying compliance with Text Order by providing signed waiver of service for one defendant and address for other defendant).

Second, Plaintiff qualified as a pro se in forma pauperis ("IFP") litigant at the time of service. "Pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993). In addition, under 28 U.S.C. § 1915(d), the Court "shall issue and

18

serve all process" in cases involving IFP plaintiffs. <u>See</u> Fed. R. Civ. P. 4(c)(3) (explaining that court "must," at IFP plaintiff's request, "order that service be made by a United States [M]arshal . . . or by a person specially appointed by the court"); <u>see also</u> <u>Graham v. Satkoski</u>, 51 F.3d 710, 713 (7th Cir. 1995) (explaining that IFP plaintiff "may rely on the Marshals Service to serve process"). The United States Court of Appeals for the Fourth Circuit has "suggested that where an in forma pauperis plaintiff, like [Plaintiff], has no control over the delay in service of process by the Marshals Service, that delay 'constitutes good cause requiring' a Rule 4(m) extension." <u>McGraw v. Gore</u>, 31 F.4th 844, 852 (4th Cir. 2022) (citing <u>Graham</u>, 51 F.3d at 713 ("The prisoner may rely on the Marshals Service to serve process, and the Marshals Service's failure to complete service is automatically 'good cause' to extend time for service under Rule 4(m)." (certain internal quotation marks omitted))). In any event, the circumstances of this case would provide "good cause" for extending the time for service under Rule 4(m).

Third, Plaintiff has sought an extension of time in which to serve Defendant (<u>see</u> Docket Entry 42), who did not oppose that request (<u>see</u> Docket Entries dated Sept. 11, 2022, to present). Under this Court's Local Rules, Defendant's failure to oppose the Extension Motion justifies granting it. <u>See</u> M.D.N.C. LR 7.3(k) ("If a respondent fails to file a [timely] response . . ., the

19

motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice."). For all these reasons, Defendant's service-related contentions do not justify dismissal of the Amended Complaint. See, e.g., Perkins v. Stanton, No. 18-cv-2465, 2019 WL 5149982, at *2 (D. Minn. June 27, 2019) ("Because [the IFP plaintiff] has good cause for the failure to effect service of process, this [c]ourt will not recommend dismissal on that basis." (citing Fed. R. Civ. P. 4(m))), recommendation adopted, 2019 WL 3545890 (D. Minn. Aug. 5, 2019).

### B. Res Judicata Challenge

"This action must be dismissed for another reason, though: the preclusive effect of [Plaintiff's] prior lawsuit." Id. Specifically, Defendant asserts that "Plaintiff's claims are barred by the doctrine of *res judicata*." (Docket Entry 38 at 27 (emphasis and all-cap font omitted).) Plaintiff, in turn, opposes Defendant's res judicata argument on the grounds that (i) its consideration would improperly convert the Dismissal Motion into one for summary judgment (see Docket Entry 40 at 13), and (ii) "the [relevant Durham County Superior Court] Order [(the "State Court Order")] was entered approximately two years before the civil rights claims being pursued in this case even accrued" (id. at 14; see also id. ("The [State Court] Order on which [Defendant] seeks to rely was therefore premature and provides no basis for a

20

dismissal on the grounds of res judicata.")).  Defendant's position should prevail.

Res judicata constitutes an affirmative defense.  See Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000).  Because a Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (emphasis added), courts usually can consider a res judicata defense at the Rule 12(b)(6) stage "only if it clearly appears on the face of the complaint," Andrews, 201 F.3d at 524 n.1 (internal quotation marks omitted).  Nevertheless, "when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."  Id.[8]

_____

8  As a general matter, in ruling on a Rule 12(b)(6) motion, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint."  E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011).  The Court may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic."  Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).  Typically, a "court cannot go beyond these documents" without "convert[ing] the motion into one for summary judgment."  E.I. du Pont, 637 F.3d at 448.  Nevertheless, "[i]n reviewing a Rule 12(b)(6) [motion, the Court] may properly take judicial notice of matters of public record."  Philips, 572 F.3d at 180; see also Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (observing that "sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss" include "the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which

21

"The Supreme Court has expressly held that the full faith and credit statute[, 28 U.S.C. § 1738,] 'directs a federal court to refer to the preclusion law of the State in which judgment was rendered.'" In re Genesys Data Techs., Inc., 204 F.3d 124, 127 (4th Cir. 2000) (quoting Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985)), certified question answered, 95 Haw. 33, 18 P.3d 895 (2001). "Thus, § 1738 'does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.'" Id. (quoting Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481–82 (1982)).

In North Carolina, "[i]t is fundamental that a final judgment, rendered on the merits, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and privies, in all other actions involving the same matter." King v. Grindstaff, 284 N.C. 348, 355, 200 S.E.2d 799, 804 (1973) (internal quotation marks omitted). "In order to successfully assert the doctrine of res judicata [in North Carolina], a litigant must prove the following essential elements:

_____

a court may take judicial notice"). "[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (internal quotation marks omitted).

(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." Moody v. Able Outdoor, Inc., 169 N.C. App. 80, 84, 609 S.E.2d 259, 262 (2005). Notably, "[a] judgment must be on the merits and not merely relate to matters of practice or procedure in order to have res judicata effect." Herring v. Winston-Salem/Forsyth Cnty. Bd. of Educ., 188 N.C. App. 441, 445, 656 S.E.2d 307, 310 (2008) (internal quotation marks omitted) (brackets in original).

However, the North Carolina Court of Appeals "has recognized that a dismissal with prejudice is an adjudication on the merits and has res judicata implications." Id. (brackets and internal quotation marks omitted). The North Carolina Court of Appeals has specifically applied this principle in cases involving dismissals with prejudice on both jurisdictional and nonjurisdictional grounds. See McCallister v. Lee, No. COA12-1168, 226 N.C. App. 201, 739 S.E.2d 628, 2013 WL 1121204, at *1-2 (N.C. Ct. App. Mar. 19, 2013) (unpublished) (affirming res judicata dismissal of complaint where prior action dismissed with prejudice pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure (the "NC Rules") for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted); see also, e.g., Street v. Smart Corp, 157 N.C. App. 303, 305, 578

23

S.E.2d 695, 698 (2003) ("[T]he trial court's order does not specify whether it applied [NC] Rule 12(b)(1) or (6) . . . . [but] the trial court dismissed the action with prejudice. This implicates a[n NC] Rule 12(b)(6), rather than a[n NC] Rule 12(b)(1), dismissal.").

On March 10, 2014, Plaintiff sued Defendant and others in North Carolina state court for alleged violations of his constitutional rights during their investigation and prosecution of Plaintiff in 1998 and 1999. (See Docket Entry 2 at 9-49.) Plaintiff raised the same fabrication of evidence claim against Defendant in that action as in the instant matter. (Compare id. at 9-17, with Docket Entry 15 at 1-10; see also Docket Entry 6 at 2, 4-5 (objecting to recommendation of dismissal on grounds that "[t]he allegations of the Complaint filed July 29, 2019, are specific, detailed, and not conclusory," and emphasizing that, "in addition to the form Complaint for Violation of Civil Rights (Non-Prisoner Complaint), the Complaint filed July 29, 2019 includes the [State Court C]omplaint filed in the Superior Court in Durham County in 2014, which has 282 paragraphs of specific and detailed allegations against the defendants," while offering to amend Complaint "to include the specific allegations in the

24

accompanying S[tate] Court [C]omplaint in a single document").)[9]

On July 24, 2014, the Durham County Superior Court ordered that

> Plaintiff's [State Court C]omplaint, filed on March 10, 2014 and designated 14 CVS 2248, should be and is hereby <u>dismissed with prejudice</u> as to all Defendants for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim upon which relief can be granted pursuant to [NC Rules] 12(b)(1), 12(b)(2) and 12(b)(6) . . . .

(Docket Entry 38-2 at 2-3 (emphasis added).)[10]  Because the State Court Order dismissed Plaintiff's State Court Complaint "with prejudice" (<u>id.</u> at 3), it qualifies as a final judgment on the

_____

9    Although the Amended Complaint incorporates without reference or attribution the allegations of the State Court Complaint (<u>see generally</u> Docket Entry 15), the Court may properly take judicial notice of the State Court Order and State Court Complaint.  <u>See</u> <u>Andrews</u>, 201 F.3d at 524 n.1.

10    Plaintiff labels the State Court Order dismissing Plaintiff's 2014 fabrication of evidence claim as "premature" because it predates final dismissal of the charges against him.  (Docket Entry 40 at 14.)  However, "[t]o be valid a judgment need not be free from error.  Normally no matter how erroneous a final valid judgment may be on either the facts or the law, it has binding [r]es judicata and collateral estoppel effect in all courts, Federal and State, on the parties and their privies."  <u>King</u>, 284 N.C. at 360, 200 S.E.2d at 808.  Here, the State Court Order dismissed, with prejudice, Plaintiff's State Court Complaint "as to all [d]efendants," including Defendant Elwell, pursuant to NC Rules 12(b)(1), 12(b)(2), and 12(b)(6).  (<u>See generally</u> Docket Entry 38-2.)  If the state court erred in its treatment of Plaintiff's fabrication of evidence claim against Defendant, the appropriate method of obtaining relief from that determination "[wa]s through appeal to [North Carolina's] appellate courts," <u>Thomas M. McInnis & Assocs., Inc. v. Hall</u>, 318 N.C. 421, 432, 349 S.E.2d 552, 558 (1986), not a separate federal lawsuit reasserting that claim.

25

merits for res judicata purposes, see McCallister, 2013 WL 1121204, at *1-2.[11]

---

11 Tension exists between the principle that res judicata requires "a final judgment, rendered on the merits, by a court of competent jurisdiction," King, 284 N.C. at 355, 200 S.E.2d at 804 (internal quotation marks omitted), and the North Carolina Court of Appeals's treatment of judgments dismissing actions for both lack of jurisdiction and failure to state a claim, see McCallister, 2013 WL 1121204, at *1-2. Plaintiff raises no argument on this front, however (see Docket Entry 40 at 12-14), and, as a neighboring court explained in rejecting such a challenge:

> "[B]ecause North Carolina currently has no mechanism for [federal courts] to certify questions of state law to its Supreme Court, [the court] must follow the decision of an intermediate appellate court unless there is persuasive data that the highest court would decide differently." *Town of Nags Head v. Toloczko*, 728 F.3d 391, 398 (4th Cir. 2013). The court has not found persuasive data that the Supreme Court of North Carolina would decide the issue raised differently from *Mc[Ca]llister*, as the holding in *Mc[Ca]llister* is not inconsistent with the treatment of res judicata by the Supreme Court of North Carolina. While the doctrine of collateral estoppel does require that the precluded determination be necessary to the outcome of the case, no such necessity requirement exists in the res judicata analysis, and this is noted as a difference between the two doctrines. *See[,] e.g., Ex rel. Tucker[ v. Frinzi]*, 344 N.C. [411,] 414, 474 S.E.2d 127[ (1996)]; *Whiteacre Partnership v. Biosignia*, 358 N.C. 1, 591 S.E.2d 870, 873 (N.C. 2004). . . .

> Accordingly, the instant case is an attempt by [the] plaintiff to relitigate a claim that had reached a final adjudication on the merits in an earlier case. Therefore, [the] plaintiff's claim against [the] defendant must be dismissed as res judicata.

Echols v. Bertie Cnty. Sheriff, No. 2:14-cv-33, 2015 WL 5725513, at *3-4 (E.D.N.C. Sept. 30, 2015) (granting res judicata treatment to prior North Carolina state court order dismissing complaint with prejudice for lack of personal jurisdiction and failure to state a claim upon which relief can be granted) (certain brackets in original), aff'd sub nom. Echols v. Sheriff of Bertie Cnty., 638 F. App'x 242 (4th Cir. 2016). Notably, the Fourth Circuit affirmed

Given that the State Court action and the instant action involve the same claim and same parties, res judicata bars the instant action.

## II. Amendment Motion

In response to the Dismissal Motion, Plaintiff sought leave to file a "Second Amended Complaint." (Docket Entry 41 at 1.) Per the Amendment Motion, the proposed Second Amended Complaint "[wa]s drafted with the intent of adding and clarifying facts to address the issues raised in [the Dismissal Motion]" (id. at 4) and to "conform [Plaintiff's] pleadings to the Court's prior rulings regarding what claims are viable" (id. at 3) by "nam[ing] only [Defendant Elwell] and assert[ing] only the cause of action and legal theory allowed by the Court in its prior Order" (id. at 4). (See also id. at 2 (observing that referenced Order "dismissed all named defendants other than defendant Jennifer Elwell and all claims other than the claim under § 1983 that Ms. Elwell intentionally fabricated a false lab report").)

At this stage of the proceedings, Plaintiff may amend his pleadings "only with [Defendant's] written consent or the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2). Defendant did not respond to the Amendment Motion (see Docket Entries dated Sept. 7, 2022, to present), which ordinarily would justify granting it as

---

this decision "for the reasons stated by the district court." Echols, 638 F. App'x at 243.

uncontested, <u>see</u> M.D.N.C. LR 7.3(k). However, under Rule 15(a),
"leave to amend a pleading should be denied . . . [when] the
amendment would have been futile." <u>Laber v. Harvey</u>, 438 F.3d 404,
426 (4th Cir. 2006) (en banc) (internal quotation marks omitted);
<u>see also</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (identifying
"futility of amendment" as basis for denying leave to amend).
"Futility is apparent if the proposed amended complaint fails to
state a claim under the applicable rules and accompanying
standards." <u>Katyle v. Penn Nat'l Gaming, Inc.</u>, 637 F.3d 462, 471
(4th Cir. 2011). Accordingly, a proposed amendment fails for
futility if it could not survive a Rule 12(b)(6) motion to dismiss.
<u>Smith v. Bank of the Carolinas</u>, No. 1:11cv1139, 2012 WL 4848993, at
*3 (M.D.N.C. Oct. 11, 2012) (citing <u>United States ex rel. Wilson v.
Kellogg Brown & Root, Inc.</u>, 525 F.3d 370, 376 (4th Cir. 2008)).

The proposed Second Amended Complaint raises the same
fabrication of evidence claim as the Amended Complaint. (<u>See
generally</u> Docket Entry 41-1; <u>see also</u> Docket Entry 41 at 1-4
(recognizing that Court held that "Amended Complaint only stated a
claim for relief against defendant Jennifer Elwell under '42 U.S.C.
§ 1983 for violation of the Due Process Clause of the Fourteenth
Amendment based on her alleged intentional preparation of a false
laboratory report as to the presence of blood on the underwear of
the victim resulting in Plaintiff's conviction'" and proposing to
"assert only the cause of action and legal theory allowed by the

28

Court in its prior Order").)  Res judicata therefore bars the claim raised in Plaintiff's Second Amended Complaint, rendering it futile.  See, e.g., Quattlebaum v. Bank of Am., N.A., 695 F. App'x 59, 59 (4th Cir. 2017) (affirming denial of leave to amend on futility grounds where "res judicata would bar litigation of the claims [the plaintiff] sought to add").  Under the circumstances, the Court will deny the Amendment Motion as futile.  See id.

### III. Extension Motion

In response to the Dismissal Motion, Plaintiff also moved "for an additional 90 days from the date of the Court's order granting same within which to effect service of process on defendant Jennifer Elwell or, in the alternative, for discovery on the issue of service of process."  (Docket Entry 42 at 1.)  Defendant did not oppose the Extension Motion.  (See Docket Entries dated Sept. 11, 2022, to present.)  Accordingly, the Court would ordinarily grant the Extension Motion as an uncontested motion under this Court's Local Rules.  See M.D.N.C. LR 7.3(k).  In light of the foregoing recommendation of dismissal, however, the Court will deny the Extension Motion as moot.

### IV. Counsel Motions

Finally, Plaintiff's Counsel seeks leave to withdraw from representation and Plaintiff seeks appointment of counsel if Plaintiff's Counsel withdraws.  (See Docket Entry 45; Oral Motion

dated Sept. 30, 2022.)  For the reasons stated below, the Court
will grant the Withdrawal Motion and deny the Appointment Motion.

In July 2019, Plaintiff commenced this action as a pro se
litigant.  (See Docket Entry 2 at 7.)  In March 2020, Plaintiff
moved for appointment of counsel (see Docket Entry 10), which
request the Court denied (see Text Order dated Mar. 31, 2020).  In
June 2022, Plaintiff again moved for appointment of counsel (see
Docket Entry 34), which request the Court denied as moot (see Text
Order dated Aug. 15, 2022) following the filing of a notice of
appearance by Plaintiff's Counsel on Plaintiff's behalf (see Docket
Entry 36 at 1).  Plaintiff and Plaintiff's Counsel entered into a
representation agreement in or around August 10, 2022 (see
generally Docket Entry 50-1),[12] leading Plaintiff's Counsel to file
a notice of appearance on August 12, 2022 (see Docket Entry 36 at
1).

On August 15, 2022, Defendant filed the Dismissal Motion.
(See Docket Entry 37 at 2.)  On September 6, 2022, Plaintiff's

---

12  The representation agreement specified that Plaintiff's
Counsel would represent Plaintiff on "the civil claims that remain
pending" in this Court, without obligating Plaintiff's Counsel "to
pursue an appeal or seek relief beyond th[is Court]."  (Id. at 1.)
It further specified that the parties "agreed" that Plaintiff's
Counsel "is in charge of the legal steps that will be taken in
connection with this matter, and in such legal matters [Plaintiff]
agrees to rely upon [Plaintiff's Counsel's] professional judgment."
(Id. at 2.)  Additionally, the agreement authorized Plaintiff's
Counsel to "at any time withdraw from . . . representation . . . on
such grounds as may be permitted or required by the North Carolina
Rules of Professional Conduct."  (Id. at 1.)

Counsel filed a response in opposition to the Dismissal Motion and, on September 7, 2022, Plaintiff's Counsel filed the Amendment Motion.  (See Docket Entries 40, 41.)  Three days later, on September 10, 2022, Plaintiff requested that Plaintiff's Counsel "take the necessary steps to file a writ of mandamus with the [Fourth Circuit] as an attempt to get the district court to move forward" if Chief Judge Schroeder did not sufficiently "move [the case] forward within a month['s] time."  (Docket Entry 50-2 at 1.)  Plaintiff's Counsel refused to file such a writ, stating:  "I will never file a mandamus against Judge Schroeder.  Federal civil litigation takes a long time, and that just has to be accepted.  A mandamus would be a waste of my time and resources, would be summarily denied, and would only irritate the courts."  (Id.)  Plaintiff responded:

> Irritate the courts, this case has been pending since I was released from the federal bureau of prison(s) [in] 2018.  It's now 2022 and I am still homeless and without gainful employment or sufficient money to live as I should.  This isn't about the courts but [Plaintiff].  I don't need the courts wasting time while trying to harm me to avoid compensation.

(Id. (brackets omitted).)  The following day, September 11, 2022, Plaintiff's Counsel filed the Extension Motion.  (Docket Entry 42.)  The next day, September 12, 2022, Plaintiff filed his pro se motion to change venue (Docket Entry 44) and Plaintiff's Counsel filed the Withdrawal Motion (see Docket Entry 45), which Plaintiff originally opposed (see id. at 3).

31

At 9:35 the following morning, the Court denied Plaintiff's Venue Motion (see Text Order dated Sept. 13, 2022), prompting an email from Plaintiff to Plaintiff's Counsel at 9:59 a.m., in which Plaintiff "direct[ed Plaintiff's Counsel] to file a motion to change venue" because Plaintiff preferred not to proceed with his litigation before the undersigned and Chief Judge Schroeder (Docket Entry 50-3 at 1). At 10:14 a.m., Plaintiff's Counsel "refuse[d]" to file such a motion, noting that "[Plaintiff] cannot direct [Plaintiff's Counsel] to file a frivolous motion, which that is" and stating, "If you want to seek a change of venue, represent yourself." (Id.) At 10:58 a.m., Plaintiff emailed the following message to Plaintiff's Counsel: "You are fired." (Docket Entry 50-4 at 1.) At 11:22 a.m., in accordance with court orders, Plaintiff's Counsel notified Plaintiff of Text Orders denying Plaintiff's Venue Motion and shortening the time for responding to the Withdrawal Motion. (See Docket Entry 50-5 at 1.) Plaintiff responded to that email notification as follows: "I will refile [Plaintiff's Venue Motion] after you withdraw and I will not oppose it. If they don't allow you to withdraw, I will fire you." (Id.) However, at the subsequent hearing on the Withdrawal Motion, Plaintiff opposed the withdrawal of Plaintiff's Counsel and requested appointment of counsel if the Court granted the Withdrawal Motion. (See Minute Entry dated Sept. 30, 2022.)

32

Under this Court's Local Rules, "[n]o attorney who has entered an appearance in any civil or criminal action shall be permitted to withdraw an appearance, or have it stricken from the record, except on order of the Court." M.D.N.C. LR 83.1(e)(1). Whether to grant a motion to withdraw lies within the Court's discretion. See Patterson v. Gemini Org., Ltd., No. 99-1537, 238 F.3d 414, 2000 WL 1718542, at *2 (4th Cir. 2000) (table) (citing Whiting v. Lacara, 187 F.3d 317, 320 (2d Cir. 1999)). "In addressing motions to withdraw as counsel, district courts have typically considered whether the prosecution of the suit is likely to be disrupted," Whiting, 187 F.3d at 320 (internal quotation marks and brackets omitted), a consideration heavily influenced by the stage of the proceedings, see id. at 321. Withdrawal of counsel becomes more problematic nearer to the trial date. See id. (comparing Brown v. National Survival Games, Inc., No. 91-cv-221, 1994 WL 660533, at *3 (N.D.N.Y. Nov. 18, 1994) (finding that because "[discovery] is not complete and the case is not presently scheduled for trial . . . . granting the [withdrawal] motion will not likely cause undue delay"), with Malarkey v. Texaco, Inc., No. 81 Civ. 5224, 1989 WL 88709, at *2 (S.D.N.Y. July 31, 1989) (denying motion to withdraw in long-pending case finally "on the verge of trial readiness")).

The North Carolina Rules of Professional Conduct oblige a lawyer to withdraw from representation of a client if "the lawyer is discharged." N.C. Rules of Pro. Conduct R. 1.16(a)(3). They

33

further <u>authorize</u> a lawyer to withdraw from representation if, inter alia, "the client knowingly and freely assents to the termination of the representation," N.C. Rules of Pro. Conduct R. 1.16(b)(2), or "the client insists upon taking action that the lawyer considers repugnant, imprudent, or contrary to the advice and judgment of the lawyer, or with which the lawyer has a fundamental disagreement," N.C. Rules of Pro. Conduct R. 1.16(b)(4).

Here, although he later reconsidered the wisdom of such action, Plaintiff both fired Plaintiff's Counsel and assented to his withdrawal. (<u>See</u> Docket Entries 50-4, 50-5.) Moreover, Plaintiff persists in taking actions that Plaintiff's Counsel considers "imprudent" and "with which [Plaintiff's Counsel] has a fundamental disagreement," N.C. Rules of Pro. Conduct R. 1.16(b)(4). (<u>See, e.g.,</u> Docket Entries 44, 50-2, 50-3, 50-5.) Further, this case has not progressed beyond the pleading stage, discovery has not yet begun, and the Court has set no trial date, such that the withdrawal of Plaintiff's Counsel — who only recently appeared in this action — will not disrupt the prosecution of these proceedings. (<u>See</u> Docket Entries dated Aug. 12, 2022, to present.) Under these circumstances, the Court will grant the Withdrawal Motion.

As for Plaintiff's associated request for appointment of counsel, the considerations that warranted denial of Plaintiff's

original request for appointment of counsel apply with even more force now:

> [Although 28 U.S.C. § 1915(e)(1)] authorizes the Court to "request an attorney to represent any person unable to afford counsel[," it] does not provide funds for the Court to pay counsel to represent Plaintiff and does not grant him "an absolute right to appointment of counsel." Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Instead, judicial assistance in obtaining pro bono counsel[] pursuant to Section 1915(e)(1) constitutes "a matter within the discretion of the District Court. It is a privilege and not a right." Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968). In this regard, the [Fourth Circuit] has held that a litigant "must show that his case is one with exceptional circumstances." Miller, 814 F.2d at 966 (citing Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975)). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds [by] Mallard v. United States Dist. Ct. for S.D. of Iowa, 490 U.S. 296 (1989) (holding that Section 1915 does not authorize compulsory appointment of counsel). Specifically, "[i]f it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978). In light of [the res judicata bar to Plaintiff's remaining claim against Defendant and his demonstrated ability to litigate this case pro se], the Court does not find it apparent (i.e., obvious) that Plaintiff possesses a colorable claim or that he lacks the capacity to present any such claim. Nor [has Plaintiff] otherwise show[n] exceptional circumstances warranting court intervention to solicit counsel willing to represent Plaintiff without compensation.

(Text Order dated Mar. 31, 2020 (certain brackets in original) (underlying added).) Therefore, the Court will deny Plaintiff's Appointment Motion.

35

<u>**CONCLUSION**</u>

Res judicata bars Plaintiff's claim against Defendant, necessitating dismissal of this action and mooting the Extension Motion. Res judicata also renders futile Plaintiff's proposed Second Amendment Complaint. Finally, ample grounds exist for Plaintiff's Counsel's withdrawal, but the record does not justify appointment of replacement counsel for Plaintiff.

**IT IS THEREFORE RECOMMENDED** that the Dismissal Motion (Docket Entry 37) be granted and Plaintiff's Section 1983 claim against Defendant for fabrication of evidence be dismissed as barred by res judicata.

**IT IS FURTHER ORDERED** that (i) the Amendment Motion (Docket Entry 41) **IS DENIED**; (ii) the Extension Motion (Docket Entry 42) **IS DENIED AS MOOT**; (iii) the Withdrawal Motion (Docket Entry 45) **IS GRANTED**; and (iv) the Appointment Motion (Oral Motion dated Sept. 30, 2022) **IS DENIED**.

This 2nd day of November, 2022.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
